**PREFERRED RISK MUTUAL INSURANCE COMPANY,**
Appellee,

v.

**UNITED STATES of America, Appellant,**

**International Trademark Association,**
Amicus Curiae.

No. 95–3104.

United States Court of Appeals,
Eighth Circuit.

Submitted Feb. 15, 1996.

Decided June 13, 1996.

Sean A. Lev, U.S. Dept. of Justice, Washington, DC, argued (Mark B. Stern, on the brief), for appellant.

Edmund J. Sease, Des Moines, Iowa, argued (Heidi Sease Nebel, on the brief), for appellee.

Before WOLLMAN, HEANEY, and MAGILL, Circuit Judges.

HEANEY, Circuit Judge.

Holding that a federal agency's use of the term "Preferred Risk" in conjunction with its flood insurance applications infringed upon an insurance company's trademark and was without a rational basis, the United States District Court for the Southern District of Iowa enjoined the agency from further use. Because we hold that the Lanham Act does not apply to the federal government, we reverse and vacate the district court's decision.

## BACKGROUND

Preferred Risk Mutual Insurance Company (PRM) is a property and casualty company that sells multi-line insurance including automobile, home, and commercial coverage. PRM has been in existence since 1947 and has used the term "Preferred Risk" to identify its policies since that time. Domiciled in Iowa, PRM is licensed to sell insurance in all

fifty states. PRM has filed trademark applications for "Preferred Risk Group," "Preferred Risk," and "Preferred Risk Mutual" on May 20, 1988.

The Federal Emergency Management Agency (FEMA) was created by Executive Order in 1978 pursuant to a federal statute that authorized the creation of a federal flood insurance program. FEMA, through its component federal agency, the Federal Insurance Administration (FIA), administers the National Federal Flood Insurance Program. As part of the program, FEMA provides flood insurance to businesses and dwellings. Policies are marketed nationwide and are brokered by independent insurance agents. Since the 1980s, FEMA has offered a lower premium rate for flood insurance in areas where the risk of flooding is lower. At some point before August 1989, FEMA began using the term "Preferred Risk" on these policy application forms and in advertisements to insurance agents.

On January 31, 1990, PRM wrote FEMA. After outlining its history of use of the term "Preferred Risk," PRM explained that it was concerned by FEMA's use of the term. Citing confusion among its agents regarding these advertisements and its trademark application of "Preferred Risk," PRM requested that FEMA cease using the term in conjunction with its policies. On February 22, 1990, PRM wrote FEMA again to convey another incident of confusion involving a FEMA Preferred Risk Flood Policy Application that had been mistakenly sent to PRM. The letter noted the importance of avoiding confusion and reiterated its request that FEMA cease using the term.

On February 23, 1990, FEMA responded in a letter that discussed the background of FEMA and the Standard Flood Insurance Policy. Because the United States logo and the name of the federal agency were both prominently displayed on all National Flood Insurance Program forms, FEMA claimed that they were not confusingly similar to the PRM logo. The letter also asserted that "Preferred Risk" was a widely-used, generic term in the insurance industry and had not and could not be granted any protected status under federal trademark law.

In addition to a letter dated September 15, 1992 informing FEMA that registration of "Preferred Risk" had been formerly allowed by the Trademark Office, PRM wrote FEMA several letters during a period from March 8, 1990 until February 25, 1993 reiterating its objections and demanding that FEMA cease using the term "Preferred Risk." In each instance, FEMA either refused PRM's request or failed to respond.

On May 25, 1993, PRM filed a complaint seeking to enforce its trademark through a writ of prohibitory or mandatory injunction. It did not seek damages. PRM sought judicial review of FEMA's decision to continue using the term "Preferred Risk" under the Administrative Procedure Act, 5 U.S.C. §§ 701–706 (1994) (APA).[1] On July 14, 1995, the District Court for the Southern District of Iowa held that the federal government's use of the term "Preferred Risk Flood Policy" constituted an infringement of PRM's trademark and that FEMA and FIA "lacked any rational basis for finding that the use of the 'Preferred Risk' term was not likely to cause confusion." (Order, July 14, 1995, at 13). The district court then enjoined the government from further use of the term. This appeal follows.

## ANALYSIS

### I. Waiver of Sovereign Immunity under the APA.

 A finding that the actions of an agency were arbitrary, capricious, and not in

---

1. 5 U.S.C. § 702 (1994) provides:

A person suffering a legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof. An action in a court of the United States seeking relief other than money damages and stating a claim that an agency or an officer or employee thereof acted or failed to act in an official capacity or under color of legal authority shall not be dismissed nor relief therein denied on the ground that it is against the United States or that the United States is an indispensable party.... Nothing herein (1) affects other limitations on judicial review or the power or duty of the court to dismiss any action or deny relief on any other appropriate legal ground; or (2) confers authority to grant relief if any other statute that grants consent to suit expressly or impliedly forbids the relief which is sought.

accordance with law is reviewed de novo. *See Shalala v. St. Paul–Ramsey Medical Ctr.*, 50 F.3d 522, 527 (8th Cir.1995). We start our analysis with the well-established proposition that the United States may not be sued without its consent. *See Affiliated Ute Citizens v. United States*, 406 U.S. 128, 141, 92 S.Ct. 1456, 1466, 31 L.Ed.2d 741 (1972). That consent must be express and unequivocal. *See United States v. Nordic Village, Inc.*, 503 U.S. 30, 33, 112 S.Ct. 1011, 1014, 117 L.Ed.2d 181 (1992). PRM seeks judicial review of FEMA's decision to continue using the term "Preferred Risk" under the APA. Section 702 of the APA explicitly consents to judicial review[2] of agency action where such action results in a legal wrong or adversely affects the plaintiff "within the meaning of a relevant statute." Thus, this waiver contains two separate requirements: 1) the person claiming a right to review must identify some agency action, and 2) the party seeking review must show that he has suffered a legal wrong or been adversely affected by that action within the meaning of a relevant statute. *See Lujan v. National Wildlife Fed'n*, 497 U.S. 871, 882–83, 110 S.Ct. 3177, 3185–86, 111 L.Ed.2d 695 (1990). We focus on the second prong.

■■■■ As a procedural statute, the APA provides no substantive requirements, but merely provides the framework for judicial review of agency action. *See Defenders of*

*Wildlife v. Administrator, EPA*, 882 F.2d 1294, 1303 (8th Cir.1989). Accordingly, "[t]here is no right to sue for a violation of the APA in the absence of a 'relevant statute' whose violation 'forms the basis for [the] complaint.'" *El Rescate Legal Serv. v. Executive Office of Immigration Review*, 959 F.2d 742, 753 (9th Cir.1991) (citing *Lujan*, 497 U.S. at 883, 110 S.Ct. at 3186); *accord A–G–E Corp. v. United States*, 968 F.2d 650, 655 (8th Cir.1992). The language of the APA makes this clear. Section 706 provides that the reviewing court shall set aside agency action found to be "arbitrary, capricious, an abuse of discretion, *or otherwise not in accordance with law.*" § 706(2)(A) (emphasis added). Thus, although the plaintiff need not demonstrate that the substantive statute independently waives federal sovereign immunity, which is the function of section 702, the plaintiff must identify a substantive statute or regulation that the agency action had transgressed *and* establish that the statute or regulation applies to the United States.

■■■■ PRM points to the Lanham Act of 1946, 15 U.S.C. §§ 1051–1127 (1994), as the substantive statute that should govern the agency's actions with respect to trademarks.[3] The question to this court then is whether the Lanham Act's requirements apply to the federal government and regulate agency action.[4] If the Lanham Act does not apply to

---

2. The APA is not an implied grant of subject-matter jurisdiction permitting federal judicial review of agency action. *see Califano v. Sanders*, 430 U.S. 99, 107, 97 S.Ct. 980, 985, 51 L.Ed.2d 192 (1977). Given that the Lanham Act's applicability to the federal government must be resolved, subject-matter jurisdiction in this case is founded upon 28 U.S.C. § 1331, federal question jurisdiction.

3. PRM also alludes to FEMA regulations as the basis for reviewing FEMA's decision. Other than its general cite to FEMA's authorizing statute, however, it does not point to a specific regulation governing the decisions of the agency on this subject. We find no substantive regulation regarding this issue and therefore, reject this as a basis for APA judicial review.

4. PRM argues that it does not assert that "the Lanham Act itself waives the government's sovereign immunity, but rather that the Lanham Act *along with* the APA waives the government's sovereign immunity." (Appellee's Br. at 24). It even concedes that "[i]t is undisputed that with-

out the procedural vessel of the APA and its broad waiver of immunity therein, the government could not be sued for infringement under the Lanham Act." *Id.* at 25. This view fundamentally mischaracterizes the APA. The APA waives sovereign immunity in certain instances where an agency action has transgressed a statute or regulation. *See* discussion *supra*. Whether the Lanham Act applies to the federal government is a separate question, albeit precedent to the issue of APA review. PRM seems to suggest that the federal government might be deemed a "person" as defined by the Lanham Act for the purposes of suits brought under the APA, but would not be a "person" if the suit were brought directly under the Lanham Act, which provides for money damages in addition to injunctive relief. Although the APA interacts with statutes governing the behavior of federal agencies, its provisions do not commingle with the provisions of those substantive statutes. In so doing, PRM confuses the issue of whether there is judicial review over agency action where such action has been regulated by federal statutes or regula-

the federal government, FEMA's use of "Preferred Risk" would not constitute a "legal wrong"[5] nor would it adversely affect PRM within the meaning of the relevant statute,[6] the Lanham Act. As a consequence, the Lanham Act could not form the basis of an APA challenge to federal agency action.

In response to the government's assertion that an APA plaintiff must point to some substantive statute that the alleged agency action transgressed, PRM argues that "it is exactly this type of unfettered agency action that Congress intended to limit by enacting the Administrative Procedure Act, which enlarges the authority of the courts to check illegal and arbitrary administrative action without any constraint." (Appellee's Br. at 13). Although we acknowledge the broad scope of the APA, its own language and the case law interpreting it clearly reject the conception of the APA as substantive, mandating free-wheeling judicial review of any agency action.

PRM also argues that the scope of judicial review is limited to the administrative record, which consists of the six letters exchanged between PRM and FEMA. As such, they contend that by failing to raise sovereign immunity in its correspondence

with PRM, FEMA waived its ability to assert immunity. This fails to recognize the distinction between a factual evidentiary record and a jurisdictional basis. The issue before our court is whether the United States has waived its sovereign immunity in this case. Sovereign immunity is jurisdictional in nature. *See FDIC v. Meyer*, 510 U.S. 471, –––– – ––––, 114 S.Ct. 996, 1000–1003, 127 L.Ed.2d 308, 317–19 (1994). Therefore, regardless of the scope of conversation between the plaintiff and employees of an administrative agency, questions of subject-matter jurisdiction may be raised at any time and may not be waived. *See Yeldell v. Tutt*, 913 F.2d 533, 537 (8th Cir.1990) (citing *Insurance Corp. of Ireland v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702, 102 S.Ct. 2099, 2104, 72 L.Ed.2d 492 (1982)). Therefore, we proceed to the issue of the Lanham Act's applicability to the federal government.

## II. Application of the Lanham Act to the United States

PRM argues that FEMA's use of the term "Preferred Risk" violates sections 1114 and 1125 of the Lanham Act.[7] Both

---

tions—where there is a strong presumption for waiver of sovereign immunity, *see Bowen v. Michigan Academy of Family Physicians*, 476 U.S. 667, 670, 106 S.Ct. 2133, 2135–36, 90 L.Ed.2d 623 (1986)—and the issue of a statute's applicability to the federal government at all, where there is a presumption against the waiver of sovereign immunity. The flaw in their position is readily seen in its contention that an action "to inflict a legal wrong (as defined by the Lanham Act) is subject to review...." (Appellee's Br. at 32). If the Lanham Act does not apply to the federal government, as is conceded, how can its actions constitute a legal wrong as defined by that statute? This construction of the APA must be rejected. Reading its brief as a whole, however, Appellee's concession with respect to the Lanham Act is ambiguous. In addition, an amicus brief filed by the International Trademark Association asserts that the Lanham Act does apply to the federal government. Therefore, we will proceed with the analysis of this question.

**5.** The invasion of a protected legal right constitutes a legal wrong. *See Pennsylvania R.R. v. Dillon*, 335 F.2d 292, 294 (D.C.Cir.), *cert. denied*, 379 U.S. 945, 85 S.Ct. 437, 13 L.Ed.2d 543 (1964).

**6.** The complained injury must fall within the "zone of interest" sought to be protected by the statutory provision whose violation forms the basis for his complaint. *See Clarke v. Securities Indus. Ass'n*, 479 U.S. 388, 396–97, 107 S.Ct. 750, 755–56, 93 L.Ed.2d 757 (1987).

**7.** 15 U.S.C. § 1114(1) (1994) provides:
Any person who shall, without consent of the registrant—
(a) use in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive; [ ]
. . . .
shall be liable in a civil in a civil action by the registrant for the remedies hereinafter provided.
15 U.S.C. § 1125(a)(1) (1994) provides:
Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which—

provisions prohibit "any person" from actions infringing upon a registered trademark. 15 U.S.C. §§ 1114, 1125. Thus, the threshold question is whether the term "person," as employed by the Lanham Act, contemplates the United States government. The Lanham Act defines "person" as natural persons and juristic persons, which includes "a firm, corporation, union, association, or other organization capable of being sued in a court of law." 15 U.S.C. § 1127 (1994). Although "in common usage, the term 'person' does not include the sovereign, [and] statutes employing the [word] are ordinarily construed to exclude it," *Will v. Michigan Dep't of Police*, 491 U.S. 58, 64, 109 S.Ct. 2304, 2308, 105 L.Ed.2d 45 (1989) (quoting *Wilson v. Omaha Indian Tribe*, 442 U.S. 653, 99 S.Ct. 2529, 61 L.Ed.2d 153 (1979)), there is no hard and fast rule of exclusion. *United States v. Cooper Corp.*, 312 U.S. 600, 604–05, 61 S.Ct. 742, 743–44, 85 L.Ed. 1071 (1941). "The purpose, the subject matter, the context, the legislative history, and the executive interpretation of the statute are aids to construction which may indicate an intent, by the use of the term, to bring state or nation within the scope of the law." *Id.*

■ PRM pins its conclusion that the Act's definition of "person" includes the federal government to the definitional language "organization capable of being sued." PRM argues that federal agencies are capable of being sued and thus should be included within the scope of the Act. The language in question must be understood within its context: a catch-all term at the end of a list of private entities. The principle of *ejusdem generis* dictates that a general term following a list of particulars be interpreted as a reference to subjects akin to those specifically enumerated. *See Norfolk & Western Ry. Co. v. American Train Dispatchers Ass'n*, 499 U.S. 117, 129, 111 S.Ct. 1156, 1163–64, 113 L.Ed.2d 95 (1991). In this case, the list of particulars are all private entities. Thus, consideration of this rule of statutory con-

struction would counsel against an interpretation that includes the federal government.

■ We are further persuaded by the recent amendment to the Lanham Act. In 1992, Congress amended the Lanham Act as follows:

> The term "person" also includes any State, any instrumentality of a State, and any officer or employee of a State or instrumentality of a State acting in his or her official capacity. Any State, and any such instrumentality, officer, or employee shall be subject to the provisions of this chapter in the same manner and to the same extent as any nongovernmental entity.

Pub.L. No. 102–542, § 3(d), 106 Stat. 3568 (1992) (amending 15 U.S.C. § 1127). Sections 1114 and 1125 were also amended to provide that "[a]s used in this subsection, the term 'any person' includes any State...." *Id.* § 3(a) & (c). Instances in which Congress has explicitly included states but not the federal government is conclusive evidence of congressional intent to exclude the federal government. *See Department of Energy v. Ohio*, 503 U.S. 607, 617–18, 112 S.Ct. 1627, 1634, 118 L.Ed.2d 255 (1992) ("Its omission has to be seen as a pointed one when so many other governmental entities are specified"). This legislative intent is even more obvious when one considers the historical context: the amendment was enacted without any mention of the federal government against a legal backdrop of cases holding that the Lanham Act did not apply to state *or* federal governments. *See Woelffer v. Happy States*, 626 F.Supp. 499, 504 (N.D.Ill.1985) (holding that the Lanham Act did not waive states' sovereign immunity); *Serra v. General Servs. Admin.*, 667 F.Supp. 1042, 1051 (S.D.N.Y.1987) ("No statute of the United States contains a consent from the United States that it may be sued for trademark infringement.... [T]he trademark claim must be dismissed."), *aff'd*, 847 F.2d

(A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, [ ]

....

shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

1045 (2d Cir.1988). In this light, it seems clear that the congressional intent was limited to providing for the Lanham Act's application to the states.

▮ Most important to this analysis is the fact that interpreting the Lanham Act to include the United States within the definition of "person" would create a right of action against the United States under the terms of that Act. Providing such a right of action against the United States requires an express and unequivocal waiver of its sovereign immunity. *See United States v. Nordic Village, Inc.,* 503 U.S. 30, 33, 112 S.Ct. 1011, 1014, 117 L.Ed.2d 181 (1992). Thus, even were there some ambiguity, the statute must be construed so as not to waive the sovereign immunity of the United States.

The strongest argument that the Lanham Act does apply to the federal government is that despite the Lanham Act's statutory language limiting registration and protective actions of trademarks to "persons," 15 U.S.C. §§ 1051(b), 1063–1064 (1994), agencies of the federal government have registered trademarks and protested the registration of trademarks by others. There are a number of Trademark Trial & Appeals Board decisions holding that state and federal government entities were juristic persons for the purposes of registering or protesting trademarks. *See, e.g., In re Dep't of Interior,* 142 U.S.P.Q. 506 (TTAB 1964); *FBI v. Societe: "M. Bril & Co.",* 172 U.S.P.Q. 310, 313 (TTAB 1971); *New York State Office of Parks & Recreation v. Atlas Souvenir & Gift Co.,* 207 U.S.P.Q. 954, 958 (TTAB 1980). However, these decisions do not consider the *liability* of the United States under the Lanham Act. Instead, their analysis employed a broad construction to give the provisions their maximum effect. *FBI,* 172 U.S.P.Q. at 313. Such an approach is inappropriate when considering waiver of sovereign immunity. To the extent that the holdings of those courts conflict with the analysis here, the decisions are not binding on this court.

Although it must be conceded that this practice raises the potential problem of inconsistent interpretations of the word "person" within the Lanham Act, the issue before us is whether the federal government can be held liable under the Lanham Act. Given the

unambiguous case law requiring explicit waiver of sovereign immunity, we are left with little choice on this issue. While the burden and the benefit of the Lanham Act have been separated in the past with respect to the states, *cf. New York State Office of Parks & Recreation,* 207 U.S.P.Q. at 958 and *Woelffer v. Happy States,* 626 F.Supp. at 504, we need not consider whether the administrative court decisions permitting the federal agencies to register trademarks were correct and leave that issue for future consideration or legislative clarification.

Finally, we address the policy concerns raised by PRM and International Trademark Association (INTA). It is suggested that our decision today will leave all trademark owners vulnerable to piracy by the federal government. INTA goes so far as to intimate that the federal government will proceed to exploit famous trademarks such as FEDERAL EXPRESS® and EXXON®. There is little evidence that such concerns with respect to the federal government are reasonably founded. Given the long-standing rule requiring an express waiver of sovereign immunity, this court must infer that Congress determined that such a threat did not outweigh the benefit of retaining sovereign immunity. If in the future, however, the legislative branch finds that such concerns must be addressed, it is free to amend the Lanham Act to expressly waive the sovereign immunity of the United States as it has done with states.

▮ Therefore, we hold that the Lanham Act does not apply to the federal government. As such, there is no substantive statute or regulation that has been transgressed by FEMA's decision to use the term "Preferred Risk" in conjunction with its flood insurance policies. Thus, there is no basis for judicial review pursuant to the APA. Because we decide that the Lanham Act does not apply to the federal government, we do not consider whether the use of "Preferred Risk" constitutes trademark infringement. The district court's decision is therefore reversed and vacated.