**FEDERAL EXPRESS CORPORATION,**
Plaintiff–Appellee,

v.

**UNITED STATES POSTAL SERVICE,**
Defendant–Appellant.

No. 97–5793.

United States Court of Appeals,
Sixth Circuit.

Argued June 12, 1998.

Decided July 31, 1998.

---

Dwayne S. Byrd (briefed), R. Larry Brown (argued and briefed), Federal Express Corporation, Memphis TN, for Federal Express Corp.

John C. Hoyle (briefed), Barbara C. Biddle (briefed), Jeffrey Clair (argued), U.S. Dept. of Justice, Civil Division, Appellate Staff, Washington, DC, for U.S. Postal Service.

L. Peter Farkas (briefed), Farkas & Manelli, Washington, DC, for Air Courier Conference of America.

Kaethe B. Schumacher (briefed), Schnader, Harrison, Segal & Lewis, Philadelphia, PA, John E. McKeever (briefed), Piper & Marbury, Philadelphia, PA, for United Parcel Service.

Before: KRUPANSKY, SILER, and COLE, Circuit Judges.

## OPINION

KRUPANSKY, Circuit Judge.

The defendant-appellant United States Postal Service ("the Postal Service" or "USPS"), on interlocutory appeal certified under 28 U.S.C. § 1292(b), has attacked the district court's rejection of its motion to dis-

miss, for lack of subject matter jurisdiction, the complaint of plaintiff-appellee Federal Express Corporation ("FedEx"), which alleged that the Postal Service had disseminated false and deceptive commercial advertisements, to the damage of FedEx, in transgression of the Lanham Act, 15 U.S.C. § 1051 *et seq.*. USPS has supported its motion with two alternate jurisdictional theories, each of which presents a pure question of law. First, USPS has proposed that, as an instrument of the national sovereign, it is immunized against federal tort causes including Lanham Act lawsuits by operation of the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b) & 2671–80. Second, the Postal Service has argued that it is not subject to the strictures of the Lanham Act because it allegedly is not a "person" within that Act's definition. On review, the appellant has contested the trial forum's adverse edict that the Postal Service may be directly sued for alleged Lanham Act infractions because Congress statutorily waived the Postal Service's traditional sovereign immunization against lawsuits including federal tort actions, and thus, as a federal instrumentality capable of being sued, USPS is a Lanham Act "person." *See Federal Express Corp. v. United States Postal Service,* 959 F.Supp. 832 (W.D.Tenn.1997).

In 1970, Congress dissolved the cabinet-level United States Post Office Department, legislatively substituting, via the Postal Reorganization Act, 39 U.S.C. § 101 *et seq.* ("the PRA"), the newly-created United States Postal Service. By statute, the Postal Service retained certain attributes of a government agency. *See, e.g.,* 39 U.S.C. § 201 (stating that USPS is "an independent establishment of the executive branch of the Government of the United States"). However,

Congress concurrently invested this hybrid entity with the "status of a private commercial enterprise." *Loeffler v. Frank,* 486 U.S. 549, 556, 108 S.Ct. 1965, 100 L.Ed.2d 549 (1988) (citation omitted). The Supreme Court has invoked the economically self-sustaining design of the USPS (*see* 39 U.S.C. § 3621), as well as the legislative history of the PRA, as mirroring a congressional intent that the Postal Service should "be run more like a business than had its predecessor, the Post Office Department." *Franchise Tax Board of California v. United States Postal Service,* 467 U.S. 512, 519–20 & n. 13, 104 S.Ct. 2549, 81 L.Ed.2d 446 (1984); *Loeffler,* 486 U.S. at 556–57, 108 S.Ct. 1965.

Although the Postal Service, with exceptions, generally possesses a legal monopoly over the commercial carriage of ordinary "letters," *see* 18 U.S.C. §§ 1693–99, 39 U.S.C. §§ 601–06, 39 C.F.R. § 310.2, a postal regulation authorized by 39 U.S.C. § 601(b) has, since 1979, permitted private couriers such as FedEx,[1] subject to specified conditions, to carry "extremely urgent letters" for hire. 39 C.F.R. § 320.6. In execution of its congressionally-ordained competitive entrepreneurial mission, USPS has, since approximately 1995, pursued an aggressive commercial advertisement campaign targeted against its private sector rivals in the expedited letter delivery market, including FedEx, in a bid to increase its share of that traffic. FedEx has alleged in its instant complaint that certain of USPS's public representations touting its "Priority Mail" and "Global Priority Mail" delivery services, and its negative comparative characterization of FedEx's competing "FedEx 2 Day" air courier service, constituted false advertisement and unfair competition violative of the Lanham Act.[2]

---

1. FedEx has alleged that it is a Delaware corporation headquartered in Memphis, Tennessee, which, since 1972, has engaged in the business of "door-to-door express delivery of documents, packages and freight throughout the United States and the world by means of a sophisticated, integrated air ground transportation system." Complaint, pages 1–2 ¶¶ 1 & 6, J.A. at 6–7.

Amicus curiae briefs were lodged in support of FedEx by United Parcel Service of America, Inc. ("UPS"), another private worldwide express document and package carrier service, and by Air

Courier Conference of America, a Tennessee non-profit corporation which serves as the trade association for the expedited document and small package delivery industry having a membership which includes FedEx, UPS, DHL Worldwide Express, Global Mail Limited, and Q International Courier, Inc..

2. This court expresses no opinion regarding the merits or accuracy of the allegations articulated in FedEx's complaint, which issues are not presently before this forum.

FedEx has charged that the Postal Service has inaccurately and misleadingly boasted that its priority mail services, though offered at lower cost, are nonetheless comparable or superior in quality to the priority document delivery services offered by FedEx. FedEx has averred that, to the contrary, its express letter delivery system includes superior services and guarantees which are absent from USPS's priority mail offerings. For instance, the plaintiff has alleged that its "FedEx 2 Day" rush delivery service includes tracking of packages throughout the shipment process, coupled with a money-back guarantee of arrival at the final destination within two days; whereas the Postal Service's "Priority Mail" and "Global Priority Mail" services promise delivery within two or three days of dispatch but do not *guarantee* arrival within any number of days, have never afforded cash refunds to dissatisfied customers, and do not include package tracking. Via its Lanham Act complaint, the plaintiff has sought an injunction forbidding future misleading advertisements by USPS, monetary damages, and other relief.

The Lanham Act stipulates, in pertinent portion:

(1) Any person who, on or in connection with any goods or services ... uses in commerce any ... false or misleading description of fact, or false or misleading representation of fact, which ...

(B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities,

shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. § 1125(a).

 The federal courts may exercise subject matter jurisdiction over a cause prosecuted against a federal agency only if the United States has consented to be sued by waiving sovereign immunity. *United States v. Mitchell*, 463 U.S. 206, 212, 103 S.Ct. 2961, 77 L.Ed.2d 580 (1983). A district court's disposition of a defendant's motion to dismiss a complaint for lack of subject matter jurisdiction poses a conclusion of law reviewed *de novo*. *Madison–Hughes v. Shalala*, 80 F.3d 1121, 1123 (6th Cir.1996).

 Consonant with the Postal Service's commercial mission, Congress mandated in the PRA that the "general powers" of USPS include the authority "to sue and be sued in its official name." 39 U.S.C. § 401(1). *See Loeffler*, 486 U.S. at 555–56, 108 S.Ct. 1965. The Supreme Court has construed that proviso to effect a general forfeiture of governmental immunity against private litigations which target the Postal Service, because Congress's inclusion of a "sue or be sued" clause in an agency's authorizing legislation creates a *presumption* of abandonment of public immunity.[3] *Franchise Tax Board*, 467

3. "In the past, we have recognized that such sue-and-be-sued waivers are to be 'liberally construed,' notwithstanding the general rule that waivers of sovereign immunity are to be read narrowly in favor of the sovereign." *Federal Deposit Insurance Corp. v. Meyer*, 510 U.S. 471, 480, 114 S.Ct. 996, 127 L.Ed.2d 308 (citations omitted). Exceptions to such waivers of immunity must satisfy stringent prerequisites:

if the general authority to "sue and be sued" is to be delimited by implied exceptions, it must be clearly shown [1] that certain types of suits are not consistent with the statutory or constitutional scheme, [2] that an implied restriction of the general authority is necessary to avoid grave interference with the performance of a governmental function, or [3] that for other reasons it was plainly the purpose of Congress to use the "sue and be sued" clause in a narrow sense. In the absence of such a showing, it must be presumed that when Congress

launched a governmental agency into the commercial world and endowed it with authority to "sue and be sued", that agency is not less amenable to judicial process than a private enterprise under like circumstances would be. *Federal Housing Administration v. Burr*, 309 U.S. 242, 245, 60 S.Ct. 488, 84 L.Ed. 724 (1940) (note omitted; bracketed material added) (*quoted in Meyer, id.*).

The Court in *Loeffler v. Frank*, 486 U.S. 549, 108 S.Ct. 1965, 100 L.Ed.2d 549 (1988), resolved that "[b]y launching the Postal Service into the commercial world, and including a sue-and-be-sued clause in its charter, Congress has cast off the Service's 'cloak of sovereignty' and given it the status of a private commercial enterprise." *Id.* at 556, 108 S.Ct. 1965 (citation and quotations omitted). Moreover, the Justices in *Loeffler* memorialized that "we find nothing in the statute [the PRA] or its legislative history to suggest that it was plainly the purpose of Congress to use the "sue and be sued" clause in a narrow

U.S. at 516–20, 104 S.Ct. 2549 (*citing, inter alia, Federal Housing Administration v. Burr*, 309 U.S. 242, 60 S.Ct. 488, 84 L.Ed. 724 (1940)). Thus, absent contrary statutory dictates or other compelling proof that Congress did not intend to renounce USPS's insulation from private lawsuits of the type at issue herein despite its general disavowal of postal immunity, the instant action must proceed against the Postal Service as it would against "any other business." *Franchise Tax Board*, 467 U.S. at 520, 104 S.Ct. 2549.

■ The Postal Service has theorized that Congress, via incorporation of the Federal Tort Claims Act, 28 U.S.C §§ 1346(b) & 2671–80 ("the FTCA"),[4] into the PRA, 39 U.S.C. § 409(c), dictated postal immunization against Lanham Act litigation irrespective of the PRA's broad general "sue and be sued" proviso. USPS has argued that Congress intended to limit the PRA's otherwise universal renunciation of sovereign protection against lawsuits by directing in the PRA that *tort* lawsuits implicating the Postal Service, like those involving the actions of any other federal governmental entity, must satisfy the requirements of the FTCA. *See* 39 U.S.C. § 409(c) ("The provisions of chapter 171 and all other provisions of title 28 relating to tort claims shall apply to tort claims arising out of the activities of the Postal Service.") Furthermore, the FTCA, by its explicit terms, provides the sole avenue by which lawsuits within its ambit may be advocated against the United States as defendant for the actions of any office of the federal government, irrespective of whether that bureau's charter legislation included or did not include a "sue or be sued" provision. *See* 28 U.S.C. § 2679(a) ("The authority of any federal

agency to sue and be sued in its own name shall not be construed to authorize suits against such federal agency on claims which are cognizable under section 1346(b) of this title, and the remedies provided by this title in such cases shall be exclusive.").

■ Thus, tort causes subordinate to the FTCA must conform to the rules, standards, and procedures of that Act; such actions may *not* be asserted against even a statutorily suable federal agency (such as USPS) in the manner that an identical claim would be pursued against a private juristic creature. *Loeffler*, 486 U.S. at 562, 108 S.Ct. 1965 ("Although Congress enacted the FTCA to allow suits against many agencies that previously had been immune from suits in tort, it also wished to 'place torts of "suable" agencies of the United States upon precisely the same footing as torts of [otherwise] "nonsuable" agencies.' ") (*citing* H.R.Rep. No. 1287, 79th Cong., 1st Sess., 6 (1945); 28 U.S.C. § 2679(a)). No *federal* law tort litigation can be commenced under the FTCA; rather, that Act legitimates only certain *state* law tort actions against the United States. *Federal Deposit Insurance Corp. v. Meyer*, 510 U.S. 471, 477–78, 114 S.Ct. 996, 127 L.Ed.2d 308 (1994) (resolving that, because only a statutorily defined class of state law claims may be litigated against the United States under the FTCA, federal law torts are not subsumed by the FTCA).

In the case in controversy, the Postal Service has asked this court to extend these settled precepts into a canon which would restrict the total universe of tort claims which may be prosecuted against it to encompass *only* those *state law* torts which are amenable under the FTCA. USPS has ar-

---

sense[.]" *Id.* at 557, 108 S.Ct. 1965 (citation and quotations omitted).

4. 28 U.S.C. § 1346(b) provides, in relevant segment:

(1) Subject to the provisions of chapter 171 of this title [the procedural sections of the FTCA], the district courts ... shall have exclusive jurisdiction of civil actions on claims against the United States, for money damages, ... for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circum-

stances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

Chapter 171 ("Tort Claims Procedure"), 28 U.S.C. §§ 2671–80, dictates *inter alia* the procedures to be followed by a state law tort claimant against the United States, including the mandatory exhaustion of administrative predicates (section 2675). This chapter also enumerates statutory categories of state law tort claims which cannot be advanced against the United States (section 2680).

gued that, because Lanham Act claims are not state law torts, but instead are *federal* law claims in the nature of statutory tort derived from common law unfair competition jurisprudence, *see Global Mail Ltd. v. United States Postal Service*, 142 F.3d 208, 211 (4th Cir.1998), they should be deemed precluded by operation of the expressed incorporation of the FTCA into the PRA, 39 U.S.C. § 409(c).

Prior to 1994, at least three circuits had agreed with USPS that federal tort litigations against the Postal Service were barred because the FTCA encompassed only state law tort claims. *See Pereira v. United States Postal Service*, 964 F.2d 873, 876–77 (9th Cir.1992); *Houston v. United States Postal Service*, 823 F.2d 896, 898–99 n. 1 (5th Cir.1987), *cert. denied*, 485 U.S. 1006, 108 S.Ct. 1470, 99 L.Ed.2d 699 (1988); *Active Fire Sprinkler Corp. v. United States Postal Service*, 811 F.2d 747, 753 (2d Cir.1987); *McCollum v. Bolger*, 794 F.2d 602, 608 (11th Cir.1986), *cert. denied*, 479 U.S. 1034, 107 S.Ct. 883, 93 L.Ed.2d 836 (1987); *Insurance Co. of North America v. United States Postal Service*, 675 F.2d 756, 758 (5th Cir.1982). However, an interpretive sea change has accompanied the Supreme Court's landmark unanimous decision in *Federal Deposit Insurance Corp. v. Meyer*, 510 U.S. 471, 114 S.Ct. 996, 127 L.Ed.2d 308 (1994), which ruled that, despite the FTCA, a federal tort action could be inaugurated directly against a federal agency (in that case, the Federal Savings and Loan Insurance Corporation) ("FSLIC") and its statutory successor (the Federal Deposit Insurance Corporation) ("FDIC")[5] because Congress had endowed them with "sue or be sued" authorization:[6]

> [W]e conclude that Meyer's [federal] constitutional tort claim is not "cognizable" under § 1346(b) [of the FTCA] because it is not actionable under § 1346(b)—that is, § 1346(b) does not provide a cause of action for such a claim. As noted above, to be actionable under § 1346(b), a claim must allege, *inter alia*, that the United States "would be liable to the claimant" as "a private person" "in accordance with the law of the place where the act or omission occurred." ... [W]e have consistently held that § 1346(b)'s reference to the "law of the place" means law of the State—the source of substantive liability under the FTCA. By definition, federal law, not state law, provides the source of liability for a claim alleging the deprivation of a federal constitutional right. To use the terminology of *Richards [v. U.S.*, 369 U.S. 1, 6, 82 S.Ct. 585, 7 L.Ed.2d 492 (1962) ], the United States simply has not rendered itself liable under · § 1346(b) for constitutional tort claims. Thus, because Meyer's constitutional tort claim is not cognizable under § 1346(b), the FTCA does not constitute his "exclusive" remedy. His claim was therefore properly brought against FSLIC "in its own name." 28 U.S.C. § 2679(a).

*Id.* at 477–78, 114 S.Ct. 996 (citations omitted).

Thus, *Meyer* prescribed that, because Congress merely decreed in 28 U.S.C. § 2679(a) that the FTCA will supply the sole remedy for *state law* tort claims against the United States generated by wrongs committed by such agencies, the FTCA does not preclude the assertion of tort lawsuits supported by substantive federal law against federal governmental instrumentalities which have been congressionally invested with the power to sue and be sued in their own names.

In rebuttal, USPS has prosecuted a misconceived campaign to distinguish *Meyer* from the case at bench by emphasizing that the PRA, *by its own terms*, separately and distinctly incorporated the FTCA. *See* 39 U.S.C. § 409(c) (commanding that the FTCA "shall apply to tort claims arising out of the activities of the Postal Service."). The Postal

---

5. *See Meyer*, 510 U.S. at 474 n. 1, 114 S.Ct. 996 (explaining that FDIC was substituted for FSLIC as the party defendant in that case after FSLIC was abolished by Congress).

6. *See Meyer*, 510 U.S. at 475–76, 114 S.Ct. 996 (observing that Congress had empowered FSLIC "[t]o sue and be sued, complain and defend, in any court of competent jurisdiction.") (*quoting* 12 U.S.C. § 1725(c)(4) (repealed 1989)); *id.* at 475 n. 3, 114 S.Ct. 996 (noting that "[t]he statute governing FDIC contains a nearly identical sue-and-be-sued clause.") (*citing* 12 U.S.C. § 1819(a) (FDIC "shall have the power ... [t]o sue and be sued, and complain and defend, in any court of law or equity, State or Federal")).

Service has hypothesized that unless section 409(c) reflects a congressional design to *exclusively* limit tort lawsuits against USPS to those state law tort claims which are governed by the FTCA (thereby precluding all federal tort lawsuits against the Postal Service including Lanham Act causes), that clause of the PRA will be reduced to a nullity, because Congress had previously legislated in the FTCA, 28 U.S.C. § 2679(a), a blanket rule that any state law tort pressed against any arm of the federal government, including an agency such as the USPS invested with legislative authorization to "sue or be sued," must be processed in accordance with the FTCA.

■ A statute should be construed to accord meaning and effect to each of its provisions. *United States v. Menasche,* 348 U.S. 528, 538–39, 75 S.Ct. 513, 99 L.Ed. 615 (1955). *See also Lake Cumberland Trust, Inc. v. United States Environmental Protection Agency,* 954 F.2d 1218, 1222 (6th Cir. 1992) ("[W]e must interpret statutes as a whole, giving effect to each word and making every effort not to interpret a provision in a manner that renders other provisions *of the same statute* inconsistent, meaningless or superfluous.") (emphasis added; citation and quotations omitted). By the same token, "courts must presume that a legislature says in a statute what it means and means in a statute what it says there." *Connecticut National Bank v. Germain,* 503 U.S. 249, 253–54, 112 S.Ct. 1146, 117 L.Ed.2d 391 (1992); *see also Hudson v. Reno,* 130 F.3d 1193, 1199

(6th Cir.1997), *petition for cert. filed,* 66 U.S.L.W. 3791 (June 8, 1998) (No. 97–1987).

Section 409(c) of the PRA states that the FTCA shall apply to "tort claims arising out of the activities of the Postal Service." As stated previously, *Meyer* commanded that the "torts" which are within the scope of the FTCA are those state law torts cognizable under 28 U.S.C. § 1346(b); thus, federal law torts, which are not governed by the FTCA, may be asserted against a suable branch of the United States government regardless of 28 U.S.C. § 2679(a)'s application of the FTCA to tort actions involving federal agencies which have been congressionally accorded suable stature. Thus, the "tort" claims against the Postal Service to which § 409(c) refers can only comprise those state law torts governed by the FTCA, because federal law torts are entirely divorced from the grasp of the FTCA. Hence, federal law torts, which are not subject to the FTCA, may be directly litigated against USPS in its own name under the global "sue and be sued" stipulation of the PRA, 39 U.S.C. § 401(1). The absence of a congressional intent to limit the expansive sweep of § 401(1)'s general divestment of postal sovereign immunity through § 409(c)'s assimilation of the FTCA is reinforced by § 409(c)'s situs within a code provision which promulgated certain jurisdictional and procedural guideposts related to lawsuits involving the USPS,[7] which reflected a congressional intent to preserve FTCA *procedures and remedies* in FTCA-type actions launched against the Postal Service, but did not evidence a congressional plan to limit the

---

**7.** Excluding subsection (c), the balance of 39 U.S.C. § 409 declares:

**Suits by and against the Postal Service**
(a) Except as provided in section 3628 of this title, the United States district courts shall have original but not exclusive jurisdiction over all actions brought by or against the Postal Service. Any action brought in a State court to which the Postal Service is a party may be removed to the appropriate United States district court under the provisions of chapter 89 of title 28.
(b) Unless otherwise provided in this title, the provisions of title 28 relating to service of process, venue, and limitations of time for bringing action in suits in which the United States, its officers, or employees are parties, and the rules of procedure adopted under title 28 for suits in which the United States, its

officers, or employees are parties, shall apply in like manner to suits in which the Postal Service, its officers, or employees are parties.

\* \* \* \* \* \*

(d) The Department of Justice shall furnish, under section 411 of this title, the Postal Service such legal representation as it may require, but with the prior consent of the Attorney General the Postal Service may employ attorneys by contract or otherwise to conduct litigation brought by or against the Postal Service or its officers or employees in matters affecting the Postal Service.
(e) A judgment against the Government of the United States arising out of activities of the Postal Service shall be paid by the Postal Service out of any funds available to the Postal Service.

*substance* of tort claims against USPS exclusively to FTCA-type causes.[8]

■ The mere fact that the FTCA, 28 U.S.C. § 2679(a), independently of § 409(c), compels the application of the FTCA to state tort law claims against USPS does not logically impose any translation upon section 409(c) other than its facial meaning. "Redundancies across statutes are not unusual events in drafting, and so long as there is no 'positive repugnancy' between two laws, a court must give effect to both." *Connecticut National Bank*, 503 U.S. at 253, 112 S.Ct. 1146 (*citing Wood v. United States*, 41 U.S. (1 Pet.) 342, 363, 10 L.Ed. 987 (1842) (instructing that enactments which are repetitive of previously adopted legislation "may be merely affirmative, or cumulative or auxiliary.")). No tension requiring harmonization exists between 39 U.S.C. § 409(c) and 28 U.S.C. § 2679(a); rather, those statutes are entirely consistent. Therefore, section 409(c) must be understood as a congressional reaffirmation that the FTCA will apply to the Postal Service as a federal instrumentality in accord with section 2679(a), engineered to preempt any residual doubt on the question potentially spawned by Congress's partial characterization of that office as a quasi-private enterprise. *See Federal Express*, 959 F.Supp. at 834–35.

Since the 1994 decision in *Meyer*, two sister circuits have rejected the Postal Service's posture that no federal law tort claim can be asserted against it, and no circuit has accepted its proffered rationale. In *Global Mail Ltd. v. United States Postal Service*, 142 F.3d 208 (4th Cir.1998), the Fourth Circuit dismissed USPS's contention that the alleged "conflict" between 39 U.S.C. § 409(c) and 28 U.S.C. § 2679(a) compelled an interpretation of section 409(c) which proscribes all federal law tort claims against the Postal Service, ruling that Congress crafted section 409(c) to furnish a "procedural guidepost" to ensure that plaintiffs understand that the FTCA governs tort claims against the Postal Service which are cognizable under that statutory scheme. *Id.* at 214–15. The *Global Mail* court concluded:

> USPS is not an enterprise that occasionally affects commercial firms indirectly in its endeavors. Rather, the language and the legislative history of the PRA make clear that Congress intended USPS to be a full-fledged competitor in the business of carrying letters, parcels and packages, and USPS has fulfilled that intention by competing head-to-head with a host of private courier services. In competing with private firms USPS advertises aggressively on television, in print, on billboards and even by sponsoring a professional cycling team. And, USPS has utilized the Lanham Act to register its marks and to ensure that other firms do not infringe upon them. We cannot conclude that Congress intended § 409(c) simultaneously to "launch [USPS] into the commercial world" and also to immunize USPS from liability for federally-created commercial torts such as the Lanham Act. Such a reading would be wholly inconsistent with Congress's stated purpose in enacting the PRA.
>
> In sum, we hold that § 409(c) does not limit the PRA's waiver of sovereign immunity such that USPS is liable in tort only for those torts cognizable by the FTCA. Consequently, USPS is not immune from Global's Lanham Act claim.[9]

*Id.* at 215 (brackets in original).

The Eighth Circuit likewise dismissed the identical argument posed by the Postal Ser-

---

8. Significantly, USPS has identified no legislative history supportive of its thesis that Congress intended 39 U.S.C. § 409(c) to forestall federal tort actions against the Postal Service. *Accord, Global Mail*, 142 F.3d at 214 ("USPS does not point to any suggestion in the legislative history of the PRA to suggest that § 409(c) was intended as a limitation on the substantive claims that might be brought against it; indeed it appears it cannot.")

9. The *Global Mail* forum disregarded a prior nonprecedential unpublished disposition of the Fourth Circuit, *Johnson v. Runyon*, 91 F.3d 131 (Table), 1996 WL 405218 (4th Cir. July 19, 1996) (per curiam), which had resolved that the pro se plaintiff could not maintain a federal constitutional tort action against the Postmaster General because only state tort law claims validated by the FTCA could be advanced against the Postal Service. The *Johnson* court did not cite *Meyer*, but instead merely followed pre-*Meyer* rulings. Thus, contrary to USPS's vigorous contention,

**544**

vice in *United States v. Q International Courier, Inc.*, 131 F.3d 770 (8th Cir.1997). After assessing the Postal Service's postulate that, by virtue of 39 U.S.C. § 409(c), a plaintiff may bring a tort claim against it only under the FTCA and hence may not initiate any federal tort claim against it despite the general abandonment of postal immunity enacted by 39 U.S.C. § 401(1), *id.* at 774–75, the Eighth Circuit mandated:

> We disagree. A more logical reading of 39 U.S.C. § 409(c) is that the Federal Tort Claims Act provides the only remedy against the Postal Service for torts to which the Federal Tort Claims Act by its terms applies in the first place. Nothing in § 409(c) suggests that it intended to forbid recovery against the Postal Service for tort claims that are beyond the reach of the Federal Tort Claims Act. It would be strange if Congress had resolved to give with one hand and then take away with the other. Our construction of the statute gives effect to both § 401(1) and § 409(c) in a way that we think makes more internal sense than the Postal Service's proposed reading.

*Id.* at 775 (*citing Meyer*, 510 U.S. at 480–83, 114 S.Ct. 996).

This court adopts the analyses of the Fourth and Eighth Circuits in concluding that, in light of *Federal Deposit Insurance Corp. v. Meyer*, 510 U.S. 471, 114 S.Ct. 996, 127 L.Ed.2d 308 (1994), lawsuits anchored in federal tort law, including claims supported by the Lanham Act, may be prosecuted against the United States Postal Service in its own name by virtue of the Postal Reorganization Act's "sue or be sued" language (39 U.S.C. § 401(1)), despite the application of the Federal Tort Claims Act to USPS, which controls only the litigation of state law tort causes against the United States.

■ The Postal Service has alternately argued that the federal courts lack Lanham Act jurisdiction over it because it is not a "person" within the meaning of that legislation. *See* 15 U.S.C. § 1125(a)(1) (positing, among other things, that "any person" who promotes certain false or misleading com-

mercial advertisements shall be subject to civil liability). The Lanham Act's definition of "person" recites that:

> The term "person" and any other word or term used to designate the applicant or other entitled to a benefit or privilege or rendered liable under the provisions of this chapter includes a juristic person as well as a natural person. The term "juristic person" includes a firm, corporation, union, association, *or other organization capable of suing and being sued in a court of law.*

15 U.S.C. § 1127 (emphasis added).

In 1992, Congress supplemented the Lanham Act meaning of "person," in the context of section 1125(a) claims such as the one *sub judice*, to include state actors:

> As used in this subsection, the term "any person" includes any State, instrumentality of any State or employee of a State or instrumentality of a State acting in his or her official capacity. Any State, and any such instrumentality, officer, or employee, shall be subject to the provisions of this chapter in the same manner and to the same extent as any nongovernmental entity.

15 U.S.C. § 1125(a)(2). *See also* 15 U.S.C. §§ 1114(1), 1122(a).

Despite the facially conclusive verbiage of section 1127, the Postal Service has argued that, irrespective of its standing as a public body legislatively exposed to sundry lawsuits, it nevertheless is not a Lanham Act "person" because 15 U.S.C. § 1127 listed only private suable entities, and 15 U.S.C. § 1125(a)(2) included only state governments and employees. Invoking the interpretive canon of *ejusdem generis*, which posits that "a general term following a list of particulars [should] be interpreted as a reference to subjects akin to those specifically enumerated," *Preferred Risk Mutual Insurance Co. v. United States*, 86 F.3d 789, 794 (8th Cir.1996), *cert. denied*, —— U.S. ——, 117 S.Ct. 1245, 137 L.Ed.2d 327 (1997) (*citing Norfolk & Western Ry. Co. v. American Train Dispatchers Ass'n*, 499 U.S. 117, 129, 111 S.Ct. 1156, 113 L.Ed.2d 95 (1991)), USPS has contended that

*Johnson* possesses zero persuasive value in the post-*Meyer* legal environment. *See Global Mail*

*Ltd. v. United States Postal Service*, 142 F.3d 208, 212 n. 1 (4th Cir.1998).

because the statutory definition of "person" expressly included private juristic persons and state governmental instrumentalities and employees, but not United States governmental entities, Congress implicitly excluded all federal instrumentalities, including those such as the Postal Service which have statutorily surrendered sovereign immunity and hence are generally exposed to lawsuits, from the Lanham Act definition of "person." *See Preferred Risk*, 86 F.3d at 793–95 (explaining that the Lanham Act does not, by its own terms, control a division of the United States government which has not clearly waived sovereign immunity because the federal government *per se* is not a "person" within the Lanham Act's definition).

The *Global Mail* and *Q International* courts have each rejected the fallacious proposition that USPS is not a Lanham Act "person," and no circuit to date has sustained it. Indeed, the Eighth Circuit in *Q International* expressly distinguished its *Preferred Risk* comments by correctly noting that, whereas the agency implicated in *Preferred Risk* (the Federal Emergency Management Agency) had not been Congressionally equipped to "sue and be sued," USPS by contrast fell squarely within the section 1127 definition of "person" because Congress had bestowed that status upon it. The court announced:

> Finally, the Postal Service argues that, as an entity of the federal government, it is immune from a Lanham Act claim under our holding in [*Preferred Risk*]. We held there that the Lanham Act does not, on its own or in conjunction with the Administrative Procedure Act, provide an express waiver of the federal government's traditional sovereign immunity. Unlike the federal entity in *Preferred Risk*, however, the Postal Service is outfitted with a sue-and-be-sued clause waiving its traditional sovereign immunity. Quick does not—and could not under *Preferred Risk*—rely upon the Lanham Act to waive the Postal Service's sovereign immunity. As we have discussed above, however, that immunity is properly waived for these purposes under 39 U.S.C. § 401(1).

*Q International*, 131 F.3d at 775. (Citations omitted).

Following *Q International*, the Fourth Circuit in *Global Mail* ascertained a similar resolution:

> It is evident that the Eighth Circuit [in *Preferred Risk*] relied on the fact that the Lanham Act did not contain an express waiver of the federal government's sovereign immunity to conclude that no federal agency could be a "juristic person" under the Act. *See Quick*, 131 F.3d at 775 (distinguishing its own decision in *Preferred Risk* because unlike FEMA the "postal service is outfitted with a sue-and-be-sued clause waiving its traditional sovereign immunity"). We agree that the Lanham Act itself contains no waiver of sovereign immunity for the federal government, and that the Act's definition of "person" as an "organization capable of being sued" falls short of the standard of explicitness required for such a waiver. But those agencies whose immunity has already been waived, and are capable of suing and being sued, fall squarely within the plain language of the Lanham Act's definition of "juristic persons." While we have applied the rule of *ejusdem generis* to interpret statutory terms "in light of the specific terms that surround it," we conclude that a federal agency whose sovereign immunity has been waived unambiguously falls within that definition. Even applying the rule to the definition of "juristic persons," a governmental agency engaged in a commercial enterprise, as is USPS, is indistinguishable in kind from a private "firm" or "association." USPS's effort to limit the application of the Lanham Act's definition to exclude itself therefore must fail.

Also, the fact that Congress amended the Act in 1992 to include states within its purview, but not the federal government, only indicates it did not intend to include a waiver of sovereign immunity for Lanham Act violations for the whole of the federal government. Again, we acknowledge that the Lanham Act itself does not include a waiver of sovereign immunity for federal agencies. But it also does not proscribe suits to enforce its provisions against agencies that are capable of being sued. Construing the Lanham Act's definition of

"juristic person" to exclude the USPS, a governmental corporation actively engaged in competition in the private market, would lead to the same "inherent inequity" that served as a catalyst for Congress' amendment of the Lanham Act in favor of suits against states for violation of the Act. S.Rep. No. 102–280 (1992) [U.S. Code Cong. & Admin. News at 3087]. For those agencies whose sovereign immunity has been independently waived, therefore, we hold that they are "juristic persons" under the terms of the Lanham Act, and may be sued to enforce the provisions of the Act. Because we find that Congress waived USPS's immunity as to Lanham Act claims, it must defend against Global's action on the merits.

*Global Mail,* 142 F.3d at 216–17 (citations omitted).

As previously indicated, this circuit adopts the well reasoned decisions of the Fourth and Eighth Circuits, which refute USPS's contention that it is not a "person" accountable for its misdeeds proscribed by the Lanham Act.

In its arguments the Postal Service has illustrated a penchant of some federal government agencies and officers to proactively seek the benefits and protections afforded by the law while simultaneously endeavoring to avoid the responsibilities and burdens imposed by legal restraints and standards of conduct which constrain others.[10] In this case, despite its apparent vigorous participation, as a quasi-private enterprise, in roiling free market competition with private sector commercial document carriers, the Postal Service has hastily elevated the shield of governmental privilege when accused of competitive wrongdoing, by demanding insulation from the legal consequences of its alleged false and misleading public broadcasts which allegedly have caused damage to the financial interests of both a private sector competitor and the consuming public. Despite its assertion that it is not a Lanham Act "person" when it is accused of overstepping the confines of that Act, USPS has, in other contexts, been quick to behave as a Lanham Act "person" in protection of its perceived rights under that enactment. *See Global Mail,* 142 F.3d at 215 ("USPS has utilized the Lanham Act to register its marks and to ensure that other firms do not infringe upon them.") Rudimentary notions of justice and fair play reinforce the conclusion, already amply supported by the plain language of the operative statutes, legislative history, and judicial interpretations, that Congress did not intend to "launch [USPS] into the commercial world and also to immunize USPS from liability for federally-created commercial torts such as the Lanham Act."[11] *Id.* (quotations omitted; brackets in original).

Accordingly, the district court's March 21, 1997 order denying the defendant's motion to dismiss the plaintiff's complaint is hereby **AFFIRMED.**

---

**10.** *Cf. Cook v. United States,* 104 F.3d 886 (6th Cir.1997), whereby this court admonished a national bureaucracy, the Internal Revenue Service, that it must adhere to notice requirements and other legal technicalities, and remarked that a disturbing history of failure by that agency to respect filing requirements "border[ed] upon an expression of arrogant immunity from executive, legislative, and judicial mandates." *Id.* at 890.

**11.** As succinctly expressed by the trial court:

By placing its no-holds-barred advertisements on national television, USPS embarked on an excursion into the commercial world unique to a federal entity. There can be little doubt, based on the history of the statute, that Congress intended the Postal Service to operate as much as possible as a private business, and the comparison ads that are the subject of FedEx's lawsuit are the direct result of taking USPS off-line in terms of bureaucratic oversight. Yet, while making use of that flexibility to aggress against its competitors on the nation's airwaves, USPS seeks to don the cloak of sovereignty when its actions in the open market attract a lawsuit. This court does not believe that Congress, in freeing the Postmaster General from his own house, intended to create a federal corporation immunized from the very law that protects consumers and competitors from deceptive commercial practices. *Federal Express,* 959 F.Supp. at 840 (note omitted).