**PUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

GLOBAL MAIL LIMITED,
<u>Plaintiff-Appellant,</u>

v.

UNITED STATES POSTAL SERVICE,

No. 97-1146

<u>Defendant-Appellee.</u>

UNITED PARCEL SERVICE,
INCORPORATED; AIR COURIER
CONFERENCE OF AMERICA,
<u>Amici Curiae.</u>

Appeal from the United States District Court
for the Eastern District of Virginia, at Alexandria.
Albert V. Bryan Jr., Senior District Judge.
(CA-96-1644-A)

Argued: July 14, 1997

Decided: April 23, 1998

Before MURNAGHAN, Circuit Judge, PHILLIPS,
Senior Circuit Judge, and BRITT, Senior United States District Judge
for the Eastern District of North Carolina, sitting by designation.

_____

Vacated and remanded by published opinion. Senior Judge Phillips
wrote the opinion, in which Judge Murnaghan and Senior Judge Britt
joined.

_____

**COUNSEL**

**ARGUED:** Edward Alan Pennington, MORGAN & FINNEGAN,
L.L.P., Washington, D.C., for Appellant. John Crawford Hoyle,

Appellate Staff, Civil Division, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellee. **ON BRIEF:** Frank W. Hunger, Assistant Attorney General, Helen F. Fahey, United States Attorney, Barbara C. Biddle, Appellate Staff, Civil Division, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellee. Hill B. Wellford, Jr., Wood W. Lay, HUNTON & WILLIAMS, Richmond, Virginia; John E. McKeever, Kaethe B. Schumacher, SCHNADER, HARRISON, SEGAL & LEWIS, Philadelphia, Pennsylvania, for Amicus Curiae UPS. L. Peter Farkas, Michael H. Selter, Mary Boney Denison, FARKAS & MANELLI, P.L.L.C., Washington, D.C., for Amicus Curiae Air Courier Conference.

_____

**OPINION**

PHILLIPS, Senior Circuit Judge:

Global Mail Limited, a private courier service, brought this action alleging that the United States Postal Service (USPS) had violated the Lanham Act in advertising its international mailing service under the name "Global Priority Mail." The district court determined that USPS was immune from Lanham Act suits through its retained sovereign immunity, and dismissed the suit. We reverse.

I

Global Mail Limited (Global), an enterprise primarily engaged in the business of sending letters, packages and parcels to recipients in other countries, entered the international mailing service market in 1987. Since that time it has continuously used the names "Global" and "Global Mail," and a design including the name "Global Mail Ltd.," in connection with its services. Global has published these marks and registered the design mark in the United States Patent and Trademark Office on March 7, 1989. Headquartered in Vienna, Virginia, Global has approximately 170 employees and totaled $32 million in service volume in 1996. Until March 1996, the United States Postal Service (USPS) operated an international mailing service under the name "World Post" that served as a direct competitor to Global's services.

2

That month, USPS changed the name of its international mailing service to "Global Priority Mail," and embarked on a widespread advertising campaign prominently featuring the new name.

Global filed a complaint in the Eastern District of Pennsylvania in June 1996, alleging violations of the Lanham Act ("Act"), 15 U.S.C. §§ 1051-1127 (1994). After the case was transferred to the Eastern District of Virginia, USPS moved to dismiss the complaint alleging sovereign immunity from suit under the Act. The district court granted the motion and issued a four-page memorandum opinion. Despite the alleged fact that USPS has filed for or registered 82 trademarks under the Lanham Act, and has filed at least six cancellation or opposition proceedings to prevent competitors from registering marks too similar to their own, the court found that a section of the Postal Reorganization Act, 39 U.S.C. § 409(c) (1994), limits USPS's tort liability to only those tort claims that are available under the Federal Tort Claims Act (FTCA), 28 U.S.C. §§ 2671-80 (1994). The court opined that because Lanham Act claims are tort claims, but federally created, they are not viable under the FTCA and that USPS therefore retains its sovereign immunity as to such claims. Said the court: "This result seems harsh, particularly in light of the Postal Service's own activity in seeking protection of its own trademarks. Harshness resulting from sovereign immunity, however, is not new, and the court cannot as a matter of equity override what it concludes to be a valid sovereign immunity defense." J.A. 218. The district court therefore dismissed Global's action, and this appeal followed.

II

Challenging the district court's dismissal of its claim, Global makes two related contentions: (1) that the Postal Reorganization Act (PRA) included within its broad waiver of USPS's sovereign immunity all tort claims, and not just those cognizable under the FTCA; and (2) that USPS is a "person" capable of being sued under the Lanham Act. Reviewing de novo the district court's dismissal of the complaint for lack of subject matter jurisdiction, see White v. United States, 53 F.3d 43, 45 (4th Cir. 1995) (citing Ahmed v. United States, 30 F.3d 514, 516 (4th Cir. 1994)), we take these issues in turn.

3

A.

As a governmental entity, USPS is entitled to sovereign immunity unless Congress waives that immunity and authorizes consent to suit. Sovereign immunity deprives a court of jurisdiction to hear a case. See FDIC v. Meyer, 510 U.S. 471, 475 (1994); United States v. Mitchell, 463 U.S. 206, 212 (1983). Congress has enacted a general waiver of USPS's sovereign immunity through the Postal Reorganization Act of 1970 (PRA). Specifically, § 401(1) provides that USPS shall have the power "to sue and be sued in its official name," 39 U.S.C. § 401(1), and "to settle and compromise claims by or against it." 39 U.S.C. § 401(8). And, Section 409(c) of the PRA, under the title "Suits by and against the Postal Service," provides: "The provisions of chapter 171 and all other provisions of title 28 relating to tort claims shall apply to tort claims arising out of activities of the Postal Service." "Chapter 171" refers to the FTCA which was itself enacted to waive the federal government's sovereign immunity for certain tort suits.

Meanwhile, the FTCA includes the provision, "The authority of any federal agency to sue and be sued in its own name shall not be construed to authorize suits against such federal agency on claims which are cognizable under section 1346(b) of this title, and the remedies provided by this title in such cases shall be exclusive." 28 U.S.C. § 2679(a). This subsection was intended to "place torts of `suable' agencies . . . upon precisely the same footing as torts of `nonsuable' agencies." H.R. Rep. No. 1287, 79th Cong., 1st sess., 6 (1945) (quoted in Loeffler v. Frank, 486 U.S. 549, 562 (1988)). In other words, those agencies that have been given the general authority to sue and be sued, and therefore have lost their general sovereign immunity, remain subject to the terms of the FTCA for those claims cognizable under that Act. See FDIC v. Meyer, 510 U.S. 471, 476-79 (1994).

The question then is the intended interrelationship of these PRA and FTCA provisions in defining the scope of the USPS's sovereign immunity from Lanham Act claims.

Although § 401(1) of the PRA is a general waiver of USPS's sovereign immunity, see Franchise Tax Bd. of California v. USPS, 467

4

U.S. 512, 519 (1984), it is axiomatic that waivers of sovereign immunity are not necessarily total. See Ruckelshaus v. Sierra Club, 463 U.S. 680, 685-86 (1983). USPS contends that § 409(c) of the PRA, making "[t]he FTCA provisions relating to tort claims" applicable to tort claims "arising out of activities of the Postal Service," limits USPS's tort liability to only those torts cognizable under the FTCA. It is undisputed that the FTCA does not provide a waiver of sovereign immunity for torts created under federal law, but only for those torts cognizable under state law. As the Supreme Court recently noted, "to be actionable under [the FTCA], a claim must allege . . . that the United States `would be liable to the claimant' as `a private person' `in accordance with the law of the place where the act or omission occurred.' . . . Indeed, we have consistently held that § 1346(b)'s reference to the `law of the place' means law of the State -- the source of substantive liability under the FTCA." Meyer, 510 U.S. at 477-78 (quoting 28 U.S.C. § 1346(a)).

The Lanham Act creates in essence a federal statutory tort, derived from the common law tort of unfair competition. See, e.g., Bauer Lamp Co., Inc. v. Shaffer, 941 F.2d 1165, 1170 (11th Cir. 1991); Homeowners Group, Inc. v. Home Mktg. Specialists, Inc., 931 F.2d 1100, 1105 & n.1 (6th Cir. 1991); Toro Co. v. R. & R. Products Co., 787 F.2d 1208, 1214 (8th Cir. 1986). And, because the FTCA does not provide a cause of action for federal torts, federal agencies typically cannot be sued under the FTCA for Lanham Act violations. See U.S. Gold & Silver Invs., Inc. v. United States ex rel. Director, U.S. Mint, 885 F.2d 620, 621 (9th Cir. 1989) ("The sole basis for plaintiff's claim alleged in this complaint . . . is violation of . . . the Lanham Act. The FTCA is not intended to encompass such a claim."); see also Beneficial Consumer Discount Co. v. Poltonowicz , 47 F.3d 91, 97 n.5 (3d Cir. 1995) (noting that "a showing of a violation of federal law will not alone suffice to qualify a claim under the FTCA's waiver"); Goldstar (Panama) S.A. v. United States, 967 F.2d 965, 969 (4th Cir. 1992) (same).

Global responds that § 409(c) does not limit§ 401(1)'s broad waiver of immunity to only those torts cognizable under the FTCA. Each of the circuits to have considered the issue has concluded that § 409(c) serves as a substantive limit on the types of suits to which USPS must submit. In the context of an alleged "constitutional tort"

5

under <u>Bivens v. Six Unknown Fed. Narcotics Agents</u>, 403 U.S. 388 (1971), the Eleventh Circuit held simply, "Section 409(c) applies the [FTCA] to the Postal Service. Any tort claim against the USPS must be cognizable under the FTCA." <u>McCollum v. Bolger</u>, 794 F.2d 602, 608 (11th Cir. 1986). In <u>Insurance Co. of North America v. USPS</u>, 675 F.2d 756, 758 (5th Cir. 1982), USPS was sued for misplacing a bag containing $100,000 in the mails. The court observed that the FTCA contained a provision that sovereign immunity was not waived "with respect to claims involving negligent handling of the mails." <u>Id.</u> The court then held that USPS's waiver of sovereign immunity under § 401(1) was "not complete; it is explicitly conditioned by § 409(c), in which Congress has stated that in actions sounding in tort, the remedies and restrictions of the FTCA shall apply." <u>Id.</u> (citations omitted). <u>See also Houston v. USPS</u>, 823 F.2d 896, 898-99 n.1 (5th Cir. 1987) (citing <u>McCollum</u> and <u>Insurance Co.</u> and observing that Congress "condition[ed] the waiver of immunity for the USPS on the provisions of the FTCA"); <u>Active Fire Sprinkler Corp. v. USPS</u>, 811 F.2d 747, 753 (2d Cir. 1987) (noting in dictum in decision involving Miller Act claim that by "incorporat[ing] the provisions of the [FTCA] . . . Congress explicitly has narrowed the waiver of immunity contained in the `sue or be sued' clause of section 401(1)") (citations omitted).*

Also in the context of a <u>Bivens</u>-type claim, the Ninth Circuit held that the "`sue and be sued' language of the Postal Service's charter should not be interpreted to enlarge the waiver of sovereign immunity specified by the FTCA." <u>Pereira v. USPS</u>, 964 F.2d 873, 876 (9th Cir. 1992). That court, however, relied on the FTCA's § 2679(a) and held that for those suits for which it provided a cause of action under the FTCA, "`sue and be sued' agencies would be subject to suit only to the same limited extent as agencies whose sovereign immunity from tort suits was being waived for the first time.'" <u>Id.</u> at 877 (quoting <u>Loeffler</u>, 486 U.S. at 562) (internal quotations omitted)).

_____

*In an unpublished opinion we have held, "Although [§ 401(1)] authorizes the USPS `to sue and be sued in its official name,' this Act does not completely eviscerate sovereign immunity. Rather, [§ 409(c)] restricts this waiver to tort claims cognizable under the [FTCA]." <u>Johnson v. Runyon</u>, No. 95-3083, 1996 WL 405218, at *1 (4th Cir. July 19, 1996) (citing <u>Insurance Co.</u>). As an unpublished opinion, though, this case holds no precedential value. <u>See</u> 4th Cir. R. 36(c).

6

While acknowledging these decisions, Global and amici insist the legal landscape shifted dramatically with the Supreme Court's decision in FDIC v. Meyer, 510 U.S. 471 (1994). There the Court considered another Bivens-type constitutional tort claim brought directly against the Federal Savings and Loan Insurance Corporation (FSLIC). The Court noted that Congress had empowered the agency in 1934 to sue and be sued, effecting a "broad" waiver of sovereign immunity. See id. at 475. When Congress passed the FTCA, it included § 2679(a) to place "suable" and "nonsuable" agencies on precisely the same footing "on claims which are cognizable" under the FTCA. Id. Recalling its holdings that constitutional torts are not "cognizable" under the FTCA, the Court then held that plaintiffs were not limited by the FTCA's restrictions on federally-created tort claims and could properly bring such a claim against an agency whose sovereign immunity had been waived through a "sue-and-be-sued" clause. Id. at 477-78. The Court specifically rejected the argument made by the Federal Deposit Insurance Corporation (FDIC, FSLIC's successor) that § 2679(a) evinced an intent for all agencies, suable and nonsuable, to be treated equally with regard to tort claims, that all claims sounding in tort were claims "cognizable" under § 1346(b), and that all federal agencies were therefore immune from suit for claims that could not be brought under the FTCA. Id.

Instead, the Court held that the FSLIC's broad "sue-and-be-sued" clause constituted a waiver of sovereign immunity for all torts, even federal torts not cognizable under § 1346(b) of the FTCA. "[S]ue-and-be-sued clauses cannot be limited by implication unless there has been a `clea[r] show[ing] that certain types of suits are not consistent with the statutory or constitutional scheme, that an implied restriction of the general authority is necessary to avoid grave interference with the performance of a governmental function, or that for other reasons it was plainly the purpose of Congress to use the sue-and-be-sued clause in a narrow sense.'" Id. at 480 (quoting Federal Housing Administration v. Burr, 309 U.S. 242, 245 (1940)). "Absent such a showing, agencies `authorized to sue and be sued are presumed to have fully waived immunity.'" Id. at 481 (quoting International Primate Protection League v. Administrators of Tulane Ed. Fund, 500 U.S. 72, 86 n.8 (1991)).

Citing Burr, Franchise Tax Board, and Loeffler (the latter two involving USPS), the Court noted that "the claimants sought to sub-

7

ject the agencies to a particular suit or incident of suit to which private businesses are amenable as a matter of course." Id. at 481. In such a situation, "it was only natural for the Court to look to the liability of private businesses for guidance. It stood to reason that the agency could not escape the liability a private enterprise would face in similar circumstances." Id. at 482. Finding no plain evidence of Congress's intention to limit the waiver of FSLIC's sovereign immunity, the court held that it was not immune as a sovereign to federal torts, though the Court ultimately found that the plaintiff had no cause of action.

The two lower federal courts that have considered USPS's liability under the Lanham Act in light of Meyer have concluded that § 401(1) operates as a waiver of the USPS sovereign immunity. In United States v. Quick International Courier, Inc., 131 F.3d 770 (8th Cir. 1997), the court concluded that Congress's broad grant of authority to sue and be sued was sufficient to evidence an intent by Congress to waive the USPS' sovereign immunity for suits not cognizable under the FTCA. The court rejected the USPS' argument that § 409 operated to preclude § 401's effect as a broad waiver of immunity, concluding instead that "[n]othing in § 409(c) suggests that it intended to forbid recovery against the Postal Service for tort claims that are beyond the reach of the Federal Tort Claims Act." Id. at 775.

Similarly, in Federal Express Corp. v. USPS, 959 F. Supp. 832 (W.D. Tenn. 1997), the court held that the USPS was subject to Lanham Act claims in the wake of Meyer. Meyer's holding that agencies with "sue and be sued" clauses could be liable for federally-created tort claims and other claims not cognizable under the FTCA, along with the PRA's statutory construction and legislative history, convinced the court that § 409(c) did not serve to limit § 401(1)'s waiver of sovereign immunity to only those tort cases that could be brought under the FTCA. Rather, § 409(c) only limited putative plaintiffs suing USPS to remedies under the FTCA for those claims cognizable under the FTCA. See id. at 835.

We agree with the holdings of Quick and Federal Express, but must concede that Meyer does not flatly dictate them. USPS is correct in observing that the FSLIC's waiver of sovereign immunity did not include a provision comparable to § 409(c) of the PRA. Nevertheless

8

Meyer does explain that the FTCA does not serve as the only means by which a federal agency can be sued in tort, and torts that are not cognizable under the FTCA still may be the sources of appropriate claims. Courts must look to the scope of a waiver of sovereign immunity to determine whether a particular agency is amenable to suit for a particular claim.

The issue before us thus narrows to the effect of § 409(c) on the PRA's broad waiver of USPS's sovereign immunity contained in § 401(1).

As the Court explained long ago in Burr and recently reiterated in Loeffler:

> [W]hen Congress establishes . . . an agency, authorizes it to engage in commercial and business transactions with the public, and permits it to "sue and be sued," it cannot be lightly assumed that restrictions on that authority are to be implied. Rather if the general authority to "sue and be sued" is to be delimited by implied exception, it must be clearly shown that certain types of suits are not consistent with the statutory or constitutional scheme, that an implied restriction of the general authority is necessary to avoid grave interference with the performance of a governmental function, or that for other reasons it was plainly the purpose of Congress to use the "sue and be sued" clause in a narrow sense. In the absence of such showing, it must be presumed that when Congress launched a governmental agency into the commercial world and endowed it with authority to "sue or be sued," that agency is not less amenable to judicial process than a private enterprise under like circumstances would be.

Loeffler, 486 U.S. at 554-55 (quoting Burr 309 U.S. at 245). See also Franchise Tax Bd., 467 U.S. at 520 (applying this presumption to USPS's waiver of immunity). The Court relied on this presumption in Loeffler to find USPS responsible for prejudgment interest in Title VII actions, and in Franchise Tax Bd. to require the USPS to withhold delinquent state income taxes, as any other employer would have to do.

9

As the Supreme Court and lower federal courts have noted, the legislative history surrounding the PRA is replete with evidence that Congress intended that USPS "be run more like a business than had its predecessor, the Post Office Department," Franchise Tax Bd., 467 U.S. at 520, and that the inclusion of the "sue and be sued" clause was part of this "general design." Loeffler , 486 U.S. at 549. Of course, USPS retains many features of a governmental entity. It remains closely regulated, to be "operated as a basic and fundamental service provided to the people by the Government of the United States . . . ." 39 U.S.C. § 101(a). As such, it is restricted in ways that many private businesses are not: For example, the Postal Rate Commission is given the authority to set rates for transporting mails, see 39 U.S.C. § 3621, and USPS is required to send certain items, such as franked mail, without a fee. See 39 U.S.C. §§ 3201-3219. And, USPS retains privileges that other private mailing services do not have, including the right of eminent domain, 39 U.S.C. § 401(9), and legal representation furnished by the Justice Department. See 39 U.S.C. § 409(d). Generally, however, "[b]y launching `the Postal Service into the commercial world,' and including a sue-and-be-sued clause in its charter, Congress has cast off the Service's `cloak of sovereignty' and given it the `status of a private commercial enterprise.'" Loeffler, 486 U.S. at 556 (quoting Library of Congress v. Shaw, 478 U.S. 310, 317 n.5 (1986)).

As identified in Meyer, supra, there are three ways in which the presumption of immunity suggested by the "broad" waiver may be rebutted: (1) when the waiver would conflict with a statutory or constitutional scheme; (2) when there is plain evidence of congressional intent to restrict the waiver; or (3) when a broad reading would lead to "grave interference with performance of a governmental function." 510 U.S. at 480 (quoting Burr, 309 U.S. at 245; see also Beneficial Finance Co. v. Dallas, 571 F.2d 125, 128 (2d Cir. 1978)). USPS bases its argument on the alleged congressional intent to restrict the waiver as demonstrated in the language of § 409(c); neither of the other two means appear to be applicable here. USPS does not point to any suggestion in the legislative history of the PRA to suggest that § 409(c) was intended as a limitation on the substantive claims that might be brought against it; indeed it appears it cannot.

Rather, USPS argues that its construction of § 409(c) is the most natural reading of the subsection's plain language and the only one

10

that gives independent meaning to § 2679(a) of the FTCA. There are two possible interpretations of that subsection: (1) that only those torts cognizable by the FTCA are available to claimants against USPS, and those claimants must utilize FTCA procedures in pursuing their claims; and (2) that for those claims cognizable under the FTCA, claimants against USPS must utilize FTCA procedures, but for other tort claims for which they have a cause of action claimants may sue USPS directly. As indicated, § 2679(a) of the FTCA provides that independent waivers of a federal agency's sovereign immunity do not authorize suits against that agency for claims cognizable under the FTCA; rather a claimant must follow the procedures of the FTCA and FTCA remedies are exclusive for such claims. As USPS urges, under the second interpretation of § 409(c) that subsection would mirror § 2679(a). Nevertheless we find it to be the more reasonable reading of the language. In the face of § 401(1)'s broad waiver of immunity, this subsection does not facially purport to create any restriction of that waiver. Rather, in a section of the PRA laying out general procedures to be used in suing USPS, we think the subsection is most logically interpreted as indicating that FTCA procedures should be used in pursuing tort claims. We interpret the subsection to be simply an additional "procedural guidepost for would-be plaintiffs" to ensure that they do not misunderstand that FTCA procedures must be followed for cognizable tort claims. Federal Express, 959 F. Supp. at 835. Accordingly, we read § 409(c) to restrict § 401(1)'s general waiver of sovereign immunity only by requiring claimants to follow FTCA procedures for those claims cognizable under the FTCA.

Under our reading, admittedly, § 2679(a) and § 409(c) have substantially the same effect. But USPS's preferred interpretation of § 409(c) would have more of an impact than we believe was intended, considering its ambiguous language and the general purpose of the PRA. In interpreting a statute we must consider both the plain language of the provisions and "its object and policy." United States v. Turpin, 65 F.3d 1207, 1210 (4th Cir. 1995) (citing Crandon v. United States, 494 U.S. 152, 158 (1990)). And, it is undisputed that the Congress's overarching object and policy in enacting the PRA was to loosen restrictions on USPS so that it might compete as a business. Accordingly "we must presume that the Service's liability is the same as that of any other business." Franchise Tax Bd., 467 U.S. at 520. Such anomaly as may be involved in interpreting § 409(c) to have pri-

11

marily the same effect with regard to USPS as does a FTCA provision is simply too slim a reed to support USPS's burden of proffering "plain evidence of congressional intent" to restrict the waiver of sovereign immunity contained in § 401(1) beyond applying FTCA procedures and limitations to those torts cognizable by the FTCA.

USPS is not an enterprise that occasionally affects commercial firms indirectly in its endeavors. Rather, the language and the legislative history of the PRA make clear that Congress intended USPS to be a full-fledged competitor in the business of carrying letters, parcels and packages, and USPS has fulfilled that intention by competing head-to-head with a host of private courier services. In competing with private firms USPS advertises aggressively on television, in print, on billboards and even by sponsoring a professional cycling team. And, USPS has utilized the Lanham Act to register its marks and to ensure that other firms do not infringe upon them. We cannot conclude that Congress intended § 409(c) simultaneously to "launch [USPS] into the commercial world" and also to immunize USPS from liability for federally-created commercial torts such as the Lanham Act. Such a reading would be wholly inconsistent with Congress's stated purpose in enacting the PRA.

In sum, we hold that § 409(c) does not limit the PRA's waiver of sovereign immunity such that USPS is liable in tort only for those torts cognizable by the FTCA. Consequently, USPS is not immune from Global's Lanham Act claim.

B.

The question remains whether USPS is a "person" capable of being sued under the Lanham Act. Aside from the sovereign immunity issue, USPS argues that the Lanham Act's prohibitions by their terms do not apply to the federal government and its agencies, including itself. USPS relies primarily on the Eighth Circuit's decision in Preferred Risk Mut. Ins. Co. v. United States, 86 F.3d 789 (8th Cir. 1996), cert. denied, 117 S. Ct. 1245 (1997). There a private insurer had filed trademark applications for names of policies including the phrase "preferred risk." The Federal Emergency Management Agency (FEMA) also used the phrase "preferred risk" in providing flood insurance through the National Federal Flood Insurance Program.

12

After complaining to FEMA for several years about the likelihood of confusion, the private insurer sued FEMA for Lanham Act violations. Because Congress had not broadly waived FEMA's sovereign immunity through a "sue and be sued" clause, the claim proceeded on the theory that FEMA's actions were arbitrary, capricious, and not in accordance with law under the Administrative Procedure Act (APA).

Accepting that the APA might serve as a vehicle to pursue valid Lanham Act claims, the Preferred Risk court determined that the Lanham Act prohibitions were not redressable against the federal government. The Lanham Act's provisions apply to any "person," defined as a natural person or a "juristic person," including "a firm, corporation, union, association, or other organization capable of suing and being sued in a court of law." 15 U.S.C. § 1127. To fit within this definition, a federal agency would have to be included within the phrase, "organization capable of being sued." The court rejected this proposition, noting that "[t]he principle of ejusdem generis dictates that a general term following a list of particulars be interpreted as a reference to subjects akin to those specifically enumerated." Id. at 794 (citation omitted). Because the specifically enumerated groups in the Lanham Act definition are private entities, "this rule of statutory construction would counsel against an interpretation that includes the federal government." Id. The court also observed that Congress had amended the Lanham Act in 1992 specifically to include state governments, and that the principle of negative implication suggested that Congress intended to omit the federal government from its subjection to the Lanham Act, especially "against a legal backdrop of cases holding that the Lanham Act did not apply to state or federal governments." Id. (citing Serra v. GSA, 667 F. Supp. 1042, 1048-49 (S.D.N.Y. 1987), aff'd, 847 F.2d 1045 (2d Cir. 1988) (dismissing a Lanham Act suit against the General Services Administration because it had not waived its sovereign immunity) (emphasis in original) (additional citations omitted)).

However, the Eighth Circuit found "[m]ost important" the "fact that interpreting the Lanham Act to include the United States within the definition of `person' would create a right of action against the United States under the terms of the Act. Providing such a right of action against the United States requires an express and unequivocal waiver of its sovereign immunity." 86 F.3d at 795 (citation omitted). Because

13

the Lanham Act did not expressly waive the federal government's sovereign immunity, the court held that FEMA could not be liable under the Lanham Act.

It is evident that the Eighth Circuit relied on the fact that the Lanham Act did not contain an express waiver of the federal government's sovereign immunity to conclude that no federal agency could be a "juristic person" under the Act. See Quick, 131 F.3d at 775 (distinguishing its own decision in Preferred Risk because unlike FEMA the "postal service is outfitted with a sue-and-be-sued clause waiving its traditional sovereign immunity"). We agree that the Lanham Act itself contains no waiver of sovereign immunity for the federal government, and that the Act's definition of "person" as an "organization capable of being sued" falls short of the standard of explicitness required for such a waiver. But those agencies whose immunity has already been waived, and are capable of suing and being sued, fall squarely within the plain language of the Lanham Act's definition of "juristic persons." While we have applied the rule of ejusdem generis to interpret general statutory terms "`in light of the specific terms that surround it,'" United States v. Parker, 30 F.3d 542, 553 n.10 (4th Cir. 1994) (quoting Hughey v. United States, 495 U.S. 411, 419 (1990)), we conclude that a federal agency whose sovereign immunity has been waived unambiguously falls within that definition. Even applying the rule to the definition of "juristic persons," a governmental agency engaged in a commercial enterprise, as is USPS, is indistinguishable in kind from a private "firm" or"association." USPS's effort to limit the application of the Lanham Act's definition to exclude itself therefore must fail.

Also, the fact that Congress amended the Act in 1992 to include states within its purview, but not the federal government, only indicates it did not intend to include a waiver of sovereign immunity for Lanham Act violations for the whole of the federal government. Again, we acknowledge that the Lanham Act itself does not include a waiver of sovereign immunity for federal agencies. But it also does not proscribe suits to enforce its provisions against agencies that are capable of being sued. Construing the Lanham Act's definition of "juristic person" to exclude the USPS, a governmental corporation actively engaged in competition in the private market, would lead to the same "inherent inequity" that served as a catalyst for Congress'

14

amendment of the Lanham Act in favor of suits against states for violation of the Act. S. Rep. No. 102-280 (1992). For those agencies whose sovereign immunity has been independently waived, therefore, we hold that they are "juristic persons" under the terms of the Lanham Act, and may be sued to enforce the provisions of the Act. Because we find that Congress waived USPS's immunity as to Lanham Act claims, it must defend against Global's action on the merits.

III

Because we conclude that Congress waived USPS's sovereign immunity in the PRA, we need not consider and therefore express no opinion on Global's arguments that the USPS is "judicially estopped" from denying its status as a "person" under the Act, or that holding USPS not to be liable under the Lanham Act would create an unlawful "taking" of Global's rights in violation of the Fifth Amendment.

IV

In conclusion, we hold that the PRA constituted a waiver of USPS's immunity as to Lanham Act claims and USPS is a "person" within the Lanham Act. We therefore vacate the judgment of the district court and remand for further proceedings consistent with this opinion.

VACATED AND REMANDED

15