**FLAMINGO INDUSTRIES (USA) LTD. and Arthur Wah, Plaintiffs–Appellants,**

v.

**UNITED STATES POSTAL SERVICE, an entity created pursuant to the Postal Reorganization Act, Defendant–Appellee.**

No. 01–15963.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted June 13, 2002.

Filed Aug. 23, 2002.

---

63. *See* note 57 *supra.*

George P. Eshoo, Redwood City, CA, for the plaintiffs-appellants.

Patricia J. Kenny, Assistant United States Attorney, San Francisco, CA, for the defendant-appellee.

Before: LAY,* THOMPSON, and TALLMAN, Circuit Judges.

DAVID R. THOMPSON, Circuit Judge.

Plaintiffs Flamingo Industries and its owner Arthur Wah (collectively "Flamingo") brought suit in the Northern District of California against the United States Postal Service. Flamingo asserted a number of federal and state law claims stemming from the Postal Service's termination of Flamingo's contract to produce U.S. Mail sacks. The district court dismissed the suit for lack of jurisdiction and improper venue, and did not reach the merits of any of the claims. Flamingo appeals.

According to the allegations of Flamingo's complaint, which we take as true for purposes of this appeal, the Postal Service terminated Flamingo's contract because it wanted to use cheaper mail sacks manufactured in Mexico, sacks that fail to meet safety and quality regulations. To disguise this scheme, the Postal Service adopted outdated requirements for mail sacks that could not be met by the modern machines used by Flamingo and other domestic manufactures, creating a pretext for canceling the domestic mail sack contracts. Once those contracts were canceled, the Service declared a fake emergency in the supply of mail sacks that allowed it to award future contracts to foreign manufactures on a no-bid basis. The Service sought to hide the false nature of this emergency by failing to follow regulations requiring documentation of any emergency.

Based on this alleged conduct, Flamingo asserted five federal antitrust claims, alleging that the Postal Service, in collusion with Mexican mail sack manufacturers, sought to suppress competition and create a monopoly in mail sack production in violation of federal antitrust laws. Flamingo also asserted claims alleging that the Postal Service violated the Postal Service Procurement Manual, the implied covenant of good faith and fair dealing, California Business and Professions Code § 17200, and 42 U.S.C. § 1983.

The district court did not reach the merits of any of these claims. It dismissed the federal antitrust claims on the ground that the Postal Service was protected by sovereign immunity from antitrust liability. It determined that the claim for breach of the implied covenant of good faith and fair dealing was a tort claim, and dismissed it for lack of exhaustion under the Federal Tort Claims Act. The court dismissed the remaining claims on the ground that venue did not lie in the Northern District of California.

We have jurisdiction under 28 U.S.C. § 1291. We affirm in part, reverse in part, and remand for further proceedings. We conclude that: (1) Flamingo may pursue claims against the Postal Service for alleged violations of federal antitrust laws because Congress has withdrawn the cloak of sovereign immunity from the Postal

---

* The Honorable Donald P. Lay, Senior United States Circuit Judge for the Eighth Circuit, sitting by designation.

Service and given it the status of a private corporation; (2) the district court had jurisdiction over Flamingo's Procurement Manual claim pursuant to 28 U.S.C. § 1491(b); (3) the court properly dismissed Flamingo's breach of implied covenant claim for failure to exhaust under the Federal Tort Claims Act; (4) although the district court had original jurisdiction over Flamingo's claim asserted under California Business & Professions Code § 17200, that claim was properly dismissed because it is preempted by federal law; (5) Flamingo's 42 U.S.C. § 1983 claim fails to state a claim upon which relief can be granted; and (6) venue for the Postal Service Procurement Manual claim was properly laid in the Northern District of California.

## I

## THE FEDERAL ANTITRUST LAW CLAIMS

Flamingo argues the district court erred in holding that sovereign immunity bars its suit against the Postal Service under federal antitrust laws.[1] Flamingo contends the Postal Service lost its sovereign status pursuant to the Postal Reorganization Act of 1970, Pub.L. No. 91–375, 84 Stat. 719 (codified as amended in Title 39 of the United States Code), which provides in relevant part that "The Postal Service shall have the ... power[ ] to sue and be sued in its official name." 39 U.S.C. § 401(1). We agree.

In *FDIC v. Meyer*, 510 U.S. 471, 484, 114 S.Ct. 996, 127 L.Ed.2d 308 (1994), the Supreme Court applied a two-step inquiry in analyzing whether a federal instrumentality enjoys immunity from a particular substantive area of law. Under this analysis, "[t]he first inquiry is whether there has been a waiver of sovereign im-

munity." *Id.* If there has been, "the second inquiry ... [is] whether the source of substantive law upon which the claimant relies provides an avenue for relief." *Id.*

## A

Following *Meyer*, we first consider whether 39 U.S.C. § 401(1) operates as a waiver of the Postal Service's sovereign immunity. More precisely, our inquiry is whether the sue-and-be-sued language of that section waives sovereign immunity as to the plaintiffs' antitrust claims.

The Supreme Court established the breadth of the Postal Service's sovereign immunity waiver in *Franchise Tax Board v. United States Postal Service*, 467 U.S. 512, 104 S.Ct. 2549, 81 L.Ed.2d 446 (1984). There, the issue was whether the Postal Service had to comply with a state tax board's liens on Postal Service employees' salaries. The Court began its analysis by recognizing that the general presumption is that a sue-and be-sued clause should be liberally construed: "[W]hen Congress establishes ... an agency, authorizes it to engage in commercial and business transactions with the public, and permits it to 'sue and be sued,' it cannot be lightly assumed that restrictions on that authority are to be implied." *Id.* at 517 (quoting *FHA v. Burr*, 309 U.S. 242, 245, 60 S.Ct. 488, 84 L.Ed. 724 (1940)). To overcome this presumption "it must be clearly shown that certain types of suits are not consistent with the statutory or constitutional scheme, that an implied restriction of the general authority is necessary to avoid grave interference with the performance of a governmental function, or that for other reasons it was plainly the purpose of Congress to use the 'sue and be sued' clause in

---

1. We do not distinguish between the various sections of the federal antitrust laws relied upon by Flamingo in its complaint—15 U.S.C.

§§ 1, 13, 13a, 14, 45—because all of these sections are subject to the same analysis as to the sovereign immunity issue presented.

a narrow sense." *Id.* at 517–18 (quoting *Burr,* 309 U.S. at 245).

The Postal Service could not overcome the presumption. In doing away with the Post Office Department and creating the Postal Service in the Postal Reorganization Act, Congress had "indicated that it wished the Postal Service to be run more like a business than had its predecessor...." *Id.* at 519–20. Congress had " 'launched [the Postal Service] into the commercial world'; hence under *Burr* not only must we liberally construe the sue-and-be-sued clause, but also we must presume that the Service's liability is the same as that of any other business." *Id.* at 520 (brackets in original).

The Court reaffirmed the breadth of the Postal Service's waiver in *Loeffler v. Frank,* 486 U.S. 549, 108 S.Ct. 1965, 100 L.Ed.2d 549 (1988). There, a mail carrier had successfully maintained a Title VII action against the Postal Service and was seeking prejudgment interest on his award of damages. *Id.* at 552. Title VII allowed for actions against the federal government, *see* 42 U.S.C. § 2000e–16, but it did not contain a provision allowing for prejudgment interest against the government. Indeed, just two years earlier, in *Library of Congress v. Shaw,* 478 U.S. 310, 106 S.Ct. 2957, 92 L.Ed.2d 250 (1986), the Supreme Court had held that sovereign immunity barred the payment of interest on an award under Title VII against the Library of Congress. The Court in *Loeffler,* however, distinguished *Shaw* because, unlike the Library of Congress, the Postal Service's sovereign immunity had been waived. *Loeffler,* 486 U.S. at 554–56, 565.

The Court stressed the difference between a sovereign instrumentality, such as the Library of Congress, and a non-sovereign sue-and-be-sued instrumentality, such as the Postal Service. The Court stated that in *Shaw,* "the starting point for our analysis was the 'no-interest rule,' which is to the effect that, absent express consent by Congress, the United States is immune from interest awards.... The dispositive question was ... whether Title VII contained an express waiver of the Library of Congress' immunity from interest." *Loeffler,* 486 U.S. at 565 (citation omitted). It did not. However, " '[t]he no-interest rule is ... inapplicable where the Government has cast off the cloak of sovereignty and assumed the status of a private commercial enterprise.' " *Id.* (quoting *Shaw,* 478 U.S. at 317 n. 5). "In creating the Postal Service, Congress [cast off the cloak of sovereignty], and therefore, the no-interest rule does not apply to it." *Id.*

In 1994, the Court returned to the sue-and-be-sued issue in *Meyer,* 510 U.S. 471, 114 S.Ct. 996, 127 L.Ed.2d 308. There, the plaintiff prevailed at trial in a *Bivens*[2] action against the Federal Savings and Loan Insurance Corporation (FSLIC), which was a federal sue-and-be-sued instrumentality. After the FDIC, the successor in interest to the FSLIC, appealed unsuccessfully, the Supreme Court granted certiorari. *Id.* at 473–75. In rejecting the FDIC's argument that the FSLIC enjoyed sovereign immunity, the Court reiterated that "sue-and-be-sued waivers are to be 'liberally' construed ... notwithstanding the general rule that waivers of sovereign immunity are to be read narrowly in favor of the sovereign." *Id.* at 480 (citation omitted). Further, the fact that *Bivens* actions were not generally available against private corporations was not controlling. "[W]e [have] looked to the liability of a private enterprise as a floor below which [a sue-and-be-sued] agency's liability

---

2. *Bivens v. Six Unknown Named Agents,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971) (recognizing an implied cause of action against federal officials who violate the Constitution).

could not fall," not a ceiling that may not be exceeded. *Id.* at 482–83 (emphasis omitted). Thus, the waiver of the FSLIC's immunity included federal constitutional torts. *Id.* at 483. The Court went on to hold, however, that *Bivens* actions could not be filed against federal agencies, only against federal officers. *Id.* at 484–86.

■ Relying on *Franchise Tax Board*, *Loeffler*, and *Meyer*, Flamingo argues that the Postal Service's waiver of immunity reaches federal antitrust actions. We agree. In *Franchise Tax Board*, the Court held that the general liberal-construction rule can be overcome only if the Postal Service makes a clear showing that the type of suit filed against it is not consistent with the statutory or constitutional scheme, an implied restriction is necessary to avoid "grave interference with the performance of a governmental function," or Congress plainly intended to use "sue and be sued" in a narrow sense. *Franchise Tax Bd.*, 467 U.S. at 517–18 (quoting *Burr*, 309 U.S. at 245); *accord Loeffler*, 486 U.S. at 554–55. Here, the Postal Service does not "attempt to make the 'clear' showing of congressional purpose necessary to overcome the presumption that immunity [from federal antitrust actions] has been waived." *Meyer*, 510 U.S. at 481. Further, it is doubtful the Postal Service could make that showing: As was the case in *Loeffler*, "since Congress expressly included several narrow and specific limitations on the operation of the [Postal Service's] sue-and-be-sued clause, *see* 39 U.S.C. § 409, none of which is applicable here, the natural inference is that it did not intend other limitations to be implied." *Loeffler*, 486 U.S. at 557 (footnote omitted).

## B

■ Having determined that Congress has waived the Postal Service's im-

munity, we turn to the second inquiry, "whether the source of substantive law upon which the claimant relies provides an avenue for relief." *Meyer*, 510 U.S. at 484. The source of substantive law upon which Flamingo relies is federal antitrust law. The Postal Service argues that a federal antitrust claim may not be pursued against it because it is not a "person" within the meaning of that law. We disagree. Although a federal sovereign is not a "person," the Postal Service is not a sovereign.

The rule that the federal government and its instrumentalities are not "persons" for federal antitrust law purposes dates back to *United States v. Cooper Corp.*, 312 U.S. 600, 61 S.Ct. 742, 85 L.Ed. 1071 (1941). In *Cooper*, the federal government attempted to bring a civil suit under the Sherman Act. The Court rejected the suit, holding that the Sherman Act only allowed "persons" to bring civil suits and the United States did not meet the definition of a "person" under the Act. *Id.* at 604, 614. The Court explained that, "in common usage, the term 'person' does not include the sovereign, [and] statutes employing the phrase are ordinarily construed to exclude it." *Id.* at 604. Although "there is no hard and fast rule of exclusion" of the sovereign from the word "person," *id.* at 604–05, the Court was concerned because the Sherman Act used the word "person" to describe both who could bring suit and who could be sued. The Court wanted to avoid interpreting "person" in a manner in which the United States could be sued. *Id.* at 606. Hence, the Court reasoned that "[t]he more natural inference ... is that the meaning of the word was in both uses limited to what are usually known as natural and artificial persons, that is, individuals and corporations." *Id.*

Later circuit court decisions extended *Cooper* to exclude federal instrumentalities from the meaning of the word "person" in federal antitrust laws. In the seminal case

of *Sea–Land Service, Inc. v. Alaska Railroad,* 659 F.2d 243, 244 (D.C.Cir.1981), then-Judge Ginsburg wrote for the court in holding that "Congress did not place the United States or its instrumentalities under the governance of the Sherman Act." The *Sea–Land Service* opinion relied on *Cooper,* and on Congress's decision after *Cooper* to amend some of the federal antitrust laws to allow the United States to bring civil actions for single, but not treble, damages. *Id.* at 245–46. This, the court reasoned, represented a Congressional intent to leave the word "persons" as the *Cooper* Court had defined it. *Id.* at 246.

In *Sakamoto v. Duty Free Shoppers, Ltd.,* 764 F.2d 1285, 1288–89 (9th Cir.1985), we applied *Sea–Land Service* and held that federal instrumentalities are immune from antitrust liability. Because the defendant government of Guam was "an instrumentality of the federal government," we held "[t]here is no reason why Guam should enjoy less immunity than the federal government itself." *Id.* at 1289 (citing *Jet Courier Servs., Inc. v. Fed. Reserve Bank of Atlanta,* 713 F.2d 1221, 1228 (6th Cir.1983), and *Sea–Land Serv.,* 659 F.2d at 246–47).

*Cooper, Sea–Land Service,* and *Sakamoto* remain valid precedent, but they do not control our decision today. These holdings require (or assume) that the federal instrumentality at issue enjoys federal sovereignty. As the Second Circuit recently explained: "[W]hile the *Sea–Land* court's holding that the Sherman Act does not expose federal agencies to legal or equitable liability for alleged antitrust violations ... is uncontroversial, such immunity was founded on the sovereign immunity of the United States." *Name.Space, Inc. v. Network Solutions, Inc.,* 202 F.3d 573, 580–81

(2d Cir.2000) (citation omitted). Here, the Postal Service does not enjoy federal sovereignty.

The Postal Service's sue-and-be-sued waiver of immunity has created a presumption that the cloak of sovereignty has been withdrawn and that the Postal Service should be treated as a private corporation. *See Franchise Tax Board,* 467 U.S. at 520 ("[W]e must presume that the Service's liability is the same as that of any other business."); *accord Loeffler,* 486 U.S. at 556 ("Congress has cast off the Service's 'cloak of sovereignty' and given it the 'status of a private commercial enterprise.' ") (quoting *Shaw,* 478 U.S. at 317 n. 5.); *see·also Meyer,* 510 U.S. at 482 (the Court has "looked to the liability of a private enterprise as a floor below which the [sue-and-be-sued] agency's liability could not fall."). Because the Postal Service is an entity with the status of a private commercial enterprise, it fits within the common meaning of the word "person," just as does any other private corporation. *See* 15 U.S.C. § 7 ("The word 'person,' or 'persons,' wherever used in [Title 15 of the United States Code] shall be deemed to include corporations ...."); *see also Vt. Agency of Natural Res. v. United States ex rel. Stevens,* 529 U.S. 765, 782, 120 S.Ct. 1858, 146 L.Ed.2d 836 (2000) ("[T]he presumption with regard to corporations is just the opposite of the one governing [sovereigns]: they are presumptively covered by the term 'person' ....") (citing 1 U.S.C. § 1) (emphasis omitted).

We find support for our conclusion in *Global Mail Ltd. v. United States Postal Service,* 142 F.3d 208, 216–17 (4th Cir. 1998). There, the Fourth Circuit held that the Postal Service was a "person" that could be sued under the Lanham Act.[3] The court explained:

---

**3.** Since *Global Mail* was decided, the Lanham Act was amended to expressly cover the United States and its instrumentalities as "per-

sons." *See* Pub.L. No. 106–43, §§ 4(c), 6(b), 113 Stat. 219, 220 (1999) (codified at 15 U.S.C. § 1127).

[T]he Lanham Act itself contains no waiver of sovereign immunity for the federal government, and ... the Act's definition of 'person' as an 'organization capable of being sued' falls short of the standard of explicitness required for such a waiver. But those agencies whose immunity has already been waived, and are capable of suing and being sued, fall squarely within the plain language of the Lanham Act's definition of 'juristic persons.' ... [A] governmental agency engaged in a commercial enterprise, as is USPS, is indistinguishable in kind from a private 'firm' or 'association.'

*Id.* at 216;[4] *accord Fed. Express Corp. v. United States Postal Serv.,* 151 F.3d 536, 544–46 (6th Cir.1998); *United States v. Q Int'l Courier, Inc.,* 131 F.3d 770, 775 (8th Cir.1997). This reasoning applies equally here, where federal antitrust law defines "person" as including any private corporation, *see* 15 U.S.C. § 7, and where Supreme Court precedent establishes that the Postal Service is to be treated as a private corporation. *See Loeffler,* 486 U.S. at 556.

The Postal Service cites several cases involving sue-and-be-sued instrumentalities where such entities were held exempt from federal antitrust laws. *See Jet Courier Servs.,* 713 F.2d at 1228–29; *E.W. Wiggins Airways, Inc. v. Mass. Port Auth.,* 362 F.2d 52, 56 (1st Cir.1966); *Webster County Coal Corp. v. Tenn. Valley Auth.,* 476 F.Supp. 529, 531–32 (W.D.Ky.1979). These cases predate the Supreme Court's decisions in *Franchise Tax Board, Loef-* *fler,* and *Meyer* and are not persuasive authority in light of the Court's recent sue-and-be-sued jurisprudence.

■ We hold that the Postal Service can be sued under federal antitrust laws because Congress has stripped the Postal Service of its sovereign status by launching it into the commercial world as a sue-and-be-sued entity akin to a private corporation. However, we add one significant caveat. Two types of immunity from federal antitrust laws exist. Our discussion has focused solely on the first kind of immunity—"status-based" immunity, *see Name.Space,* 202 F.3d at 581—because the parties only raise that type of immunity. A second type of immunity—"conduct-based" immunity—can apply when an entity does not enjoy status-based immunity, but acts at the direction of a federal sovereign. *See id.* at 581–82 (holding that a nonsovereign contractor enjoyed immunity from antitrust law where it was exercising a Congressionally-mandated monopoly). Accordingly, our holding that the Postal Service does not enjoy status-based immunity does not prevent the Service from asserting conduct-based immunity if the action of the Postal Service being challenged was taken at the command of Congress. *See generally Air Courier Conf. v. Am. Postal Workers Union,* 498 U.S. 517, 519, 111 S.Ct. 913, 112 L.Ed.2d 1125 (1991) (recognizing that Congress has conferred a legal monopoly on the Postal Service over mail delivery in and from the United States).

---

4. The Postal Service points out that *Global Mail* holds that Lanham Act claims, which are federal tort claims, may be brought against the Postal Service. According to the Postal Service, this is contrary to the law of this circuit under *Pereira v. United States Postal Serv.,* 964 F.2d 873 (9th Cir.1992). In *Pereira,* we held that the Postal Service is immune from suit for federal torts because the sue-and-be-sued clause is limited by the Federal Tort Claims Act (FTCA). *Id.* at 876–77. However, subsequent to *Pereira,* the Supreme Court held that the FTCA does not limit a sue-and-be-sued waiver as to federal tort claims because the FTCA only applies to state tort claims. *Meyer,* 510 U.S. at 476–79. This overruled *Pereira.*

## II

## THE PROCUREMENT
## MANUAL CLAIM

The Postal Service argues that the district court lacked jurisdiction over Flamingo's claim that it violated the Postal Service Procurement Manual because Flamingo lacks standing to assert the claim. The parties' briefs devote much energy to an inconsistent series of cases from the 1970's to the 1990's discussing this issue. We need not attempt to reconcile these cases; they are irrelevant.

In 1996, Congress amended 28 U.S.C. § 1491, part of the codification of the Tucker Act, by enacting the Administrative Dispute Resolution Act of 1996 ("ADRA"), Pub.L. No. 104–320, 110 Stat. 3870 (1996). The relevant portion of the ADRA, as codified, reads:

> Both the Unite[d] States Court of Federal Claims and the district courts of the United States shall have jurisdiction to render judgment on an action by an interested party objecting to a solicitation by a Federal agency for bids or proposals for a proposed contract or to a proposed award or the award of a contract or any alleged violation of statute or regulation in connection with a procurement or a proposed procurement. Both the United States Court of Federal Claims and the district courts of the United States shall have jurisdiction to entertain such an action without regard to whether suit is instituted before or after the contract is awarded.

28 U.S.C. § 1491(b)(1). A sunset provision in the ADRA terminated district court jurisdiction under § 1491(b)(1) on January 1, 2001; however, a savings provision states that the termination of jurisdiction "shall not affect the jurisdiction of a court of the United States to continue with any proceeding that is pending before the court on December 31, 2000." ADRA, Pub.L. 104–320, § 12(d)-(e). Flamingo is within this savings clause because it filed its action on July 11, 2000. This being so, the questions presented are whether § 1491(b)(1) applies to the Postal Service, and if so, whether Flamingo has standing to assert the Procurement Manual claim. At our request, the parties addressed these questions at oral argument.

■ Having considered the parties' arguments, we hold that § 1491(b)(1) applies to the Postal Service. In *Emery Worldwide Airlines, Inc. v. United States*, 264 F.3d 1071, 1080–83 (Fed.Cir.2001), the Federal Circuit held that the Postal Service could be sued under § 1491(b)(1). The court explained that, although Title 28 of the United States Code does not define "federal agency," it does define "agency" in a manner that covers the Postal Service. *Emery Worldwide Airlines*, 264 F.3d at 1080–81 (citing 28 U.S.C. § 451 and 39 U.S.C. § 201). We agree with the reasoning of *Emery Worldwide Airlines*, and follow its holding.[5]

■ We also hold that Flamingo has standing under § 1491(b)(1) to assert its Procurement Manual claim. Section 1491(b)(1) provides for district court jurisdiction over any claim by an "interested party objecting to a solicitation by a Federal agency for bids or proposals for a

---

**5.** 28 U.S.C. § 1491(b)(4) imports Administrative Procedures Act (APA) standards of review into procurement cases under 28 U.S.C. § 1491(b)(1). 39 U.S.C. § 410(a) exempts the Postal Service from most of the APA. In *Emery Worldwide Airlines*, the court noted the possibility that 28 U.S.C. § 1491(b)(4) and 39 U.S.C. § 410(a) are in conflict, although the court avoided deciding the issue. *See Emery Worldwide Airlines*, 264 F.3d at 1084–85. We do not see a conflict. 28 U.S.C. § 1491(b)(4) incorporates by reference the APA review standards into cases under 28 U.S.C. § 1491(b)(1); 28 U.S.C. § 1491(b)(4) does not create APA liability.

proposed contract or to a proposed award or the award of a contract or any alleged violation of statute or regulation in connection with a procurement or a proposed procurement." Flamingo alleges that the Postal Service violated its Procurement Manual by maintaining contracts with Mexican suppliers of mail sacks that violated the Manual while unfairly canceling a procurement contract with Flamingo. Flamingo also alleges that the Postal Service violated the Manual by falsely declaring an emergency in the supply of mail sacks and failing to document this emergency so as to be able to award no-bid contracts to Mexican suppliers. Flamingo has standing under 28 U.S.C. § 1491(b)(1).

## III

### THE IMPLIED COVENANT CLAIM

■ The district court held that it lacked jurisdiction over Flamingo's claim for an alleged violation of the implied covenant of good faith and fair dealing because that claim was an unexhausted tort claim barred under the Federal Tort Claims Act (FTCA), 28 U.S.C. §§ 1346(b), 2671–2680. The FTCA applies to the Postal Service, *see* 39 U.S.C. § 409(c), and Flamingo has never disputed that the claim is a tort claim covered by the FTCA. Under the FTCA, the claim had to be administratively exhausted for the court to have subject matter jurisdiction. *Jerves v. United States*, 966 F.2d 517, 518–19 (9th Cir.1992); *see* 28 U.S.C. § 2675(a).

■ In determining that the claim was unexhausted, the district court considered a declaration submitted by the Postal Service and took note of Flamingo's failure to proffer contrary evidence. We therefore treat the court's dismissal of the claim as a grant of summary judgment, which we review de novo. *Lopez v. Smith*, 203 F.3d 1122, 1131 (9th Cir.2000) (en banc).

■ The declaration submitted to the district court by the Postal Service demonstrated that Flamingo had not met the exhaustion requirement of the FTCA. Flamingo failed to present any evidence contradicting this declaration. We affirm the district court's dismissal of the claim.

## IV

### THE CALIFORNIA BUSINESS & PROFESSIONS CODE § 17200 CLAIM

The Postal Service argues that the district court lacked supplemental jurisdiction over the California Business & Professions Code § 17200 claim and, alternatively, that the claim is preempted by federal law. We do not reach the issue of *supplemental* jurisdiction because we hold that the district court properly exercised *original* jurisdiction over this claim under 39 U.S.C. § 409(a). Nonetheless, the claim was properly dismissed because it is preempted by federal law.

### A

■ We first consider the district court's jurisdiction. Subject to certain inapplicable exceptions, 39 U.S.C. § 409(a) provides that "the United States district courts shall have original but not exclusive jurisdiction over all actions brought by or against the Postal Service." The plain language of this statute grants United States district courts original jurisdiction over lawsuits by or against the Postal Service, as other circuits have held. *E.g. Licata v. United States Postal Serv.*, 33 F.3d 259, 260–62 (3d Cir.1994); *Cont'l Cablevision of St. Paul, Inc. v. United States Postal Serv.*, 945 F.2d 1434, 1437–41 (8th Cir.1991); *Am. Postal Workers Union v. United States Postal Serv.*, 830 F.2d 294, 312 n. 33 (D.C.Cir.1987).

We would stop our discussion here, except for the need to clarify an arguable inconsistency in our cases interpreting 39 U.S.C. § 409(a). In *Janakes v. United States Postal Service,* 768 F.2d 1091, 1093 (9th Cir.1985), we quoted and adopted the Seventh Circuit's holding in *Peoples Gas, Light & Coke Co. v. United States Postal Service,* 658 F.2d 1182, 1189 (7th Cir.1981), that § 409(a) "does not confer subject matter jurisdiction for actions in which the [Postal] Service is a party, but requires a 'substantive legal framework' of federal law to confer federal subject matter jurisdiction." According to *Peoples Gas* and *Janakes,* § 409(a) "merely removes the barriers of sovereign immunity." *Id.* Later, without citing *Janakes,* we held in *Wright v. United States Postal Service,* 29 F.3d 1426, 1430 (9th Cir.1994), that "39 U.S.C. § 409(a) ... grants the district courts original but not exclusive jurisdiction over actions by or against the USPS." *See also Silver v. United States Postal Serv.,* 951 F.2d 1033, 1035 & n. 1 (9th Cir.1991) (per curiam) (citing without discussion § 409(a) as a basis for jurisdiction).

A careful reading of our cases reveals that no true inconsistency exists because *Janakes* is distinguishable. In *Janakes,* the issue we decided was whether § 409(a) created a substantive right to bring suit. *See Janakes,* 768 F.2d at 1093. We held it did not. *Id.* Although some language in *Janakes* suggests that § 409(a) does not confer subject matter jurisdiction, that language is dicta. Indeed, the Seventh Circuit, which in *Peoples Gas* created the decision that prompted our *Janakes* language, later adopted a reading of *Peoples Gas* consistent with the reading we now apply to *Janakes. See Powers v. United States Postal Serv.,* 671 F.2d 1041, 1042 (7th Cir.1982). We are satisfied that our reading, following *Wright,* is correct. The plain language of § 409(a) states that the district courts "shall have original jurisdiction"—the same words used to grant juris-

diction elsewhere in the United States Code. *E.g.* 28 U.S.C. §§ 1331, 1332.

We hold that the district court correctly exercised original subject matter jurisdiction under 39 U.S.C. § 409(a) over Flamingo's claim asserted under California Business & Professions Code § 17200.

## B

 The district court's dismissal of the California Business & Professions Code § 17200 claim was proper, however, because that claim is preempted by federal law. The district court did not reach this issue, but we may affirm on any ground supported by the record. *See Laboa v. Calderon,* 224 F.3d 972, 981 n. 7 (9th Cir. 2000).

 Preemption comes in several forms. Here we are concerned with conflict preemption, by which "state law is preempted to the extent that it actually conflicts with federal law. Such a conflict arises when 'compliance with both federal and state regulations is a physical impossibility,' ..., or where state law 'stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.'" *Pac. Gas & Elec. Co. v. State Energy Res. Conservation & Dev. Comm'n,* 461 U.S. 190, 204, 103 S.Ct. 1713, 75 L.Ed.2d 752 (1983) (quoting *Florida Lime & Avocado Growers, Inc. v. Paul,* 373 U.S. 132, 142–43, 83 S.Ct. 1210, 10 L.Ed.2d 248 (1963), and *Hines v. Davidowitz,* 312 U.S. 52, 67, 61 S.Ct. 399, 85 L.Ed. 581 (1941)).

The state law at issue, California Business & Professions Code § 17200, is a notoriously broad statute. It applies to, among other things, "any unlawful, unfair or fraudulent business act or practice." Here, Flamingo is using the section to challenge procurement decisions made by the Postal Service involving the Postal

Service's requirements for mail bags. This use of section 17200 conflicts with federal law.

The Postal Service is expressly authorized by 39 U.S.C. § 401(3) to determine the character and necessity of its expenditures. And, although 28 U.S.C. § 1491(b)(1) allows for challenges to Postal Service procurement decisions, 28 U.S.C. § 1491(b)(4) provides that such decisions may only be invalidated by a federal court applying the deferential APA standard of review codified at 5 U.S.C. § 706 (for example, if the procurement decision is arbitrary and capricious). Allowing the requirements of California Business & Professions Code § 17200 to control the Postal Service's procurement decisions would impinge upon the Service's right to control the character and necessity of its purchases free from state constraint, and would negate the deferential standard Congress has created for federal court review of such decisions. *Cf. United States v. City of Pittsburg, Cal.*, 661 F.2d 783, 785–86 (9th Cir.1981) (holding that a local ordinance requiring letter carriers to obtain consent before crossing lawns was preempted by a Postal Service regulation allowing mail carriers to cross lawns unless the owner objects because of the clear conflict between the two provisions). Flamingo's claim asserted under California Business & Professions Code § 17200 is preempted by federal law.

## V

### THE § 1983 CLAIM

■■■ The Postal Service argues that we should dismiss Flamingo's 42 U.S.C. § 1983 claim for failure to state a claim upon which relief can be granted. We agree. The Postal Service acts under federal law, and § 1983 does not allow for a suit based upon actions taken under color of federal law. *Billings v. United States*, 57 F.3d 797, 801 (9th Cir.1995). Exercis-

ing our authority to affirm on any ground supported by the record, we dismiss with prejudice the § 1983 claim.

## VI

### VENUE

■■■ The district court, after dismissing the federal antitrust claims and the breach of implied covenant claim, dismissed the Procurement Manual, California Business and Professions Code § 17200, and 42 U.S.C. § 1983 claims for improper venue. It held that 15 U.S.C. § 22 did not support venue for these claims once the antitrust claims were dismissed.

Section 22 states:

> Any suit, action, or proceeding *under the antitrust laws* against a corporation may be brought not only in the judicial district whereof it is an inhabitant, but also in any district wherein it may be found or transacts business; and all process in such cases may be served in the district of which it is an inhabitant, or wherever it may be found.

15 U.S.C. § 22 (emphasis added).

We have held earlier in this opinion that the district court erred in dismissing the antitrust claims on the ground of sovereign immunity. We now hold that under 15 U.S.C. § 22, venue for the antitrust claims was proper in the Northern District of California because the Postal Service may be found in, and transacts business in, that district. *See id.*

Because venue is proper in the Northern District of California for the antitrust claims, and because the Procurement Manual, § 17200, and § 1983 claims arise out of the same common nucleus of facts, venue in the Northern District was proper for these claims as well. *See Beattie v. United States*, 756 F.2d 91, 100–104 (D.C.Cir. 1984), *overruled on other grounds in Smith v. United States*, 507 U.S. 197, 113

S.Ct. 1178, 122 L.Ed.2d 548 (1993); *Seattle Audubon Soc'y v. Lyons,* 871 F.Supp. 1286, 1290 (W.D.Wash.1994). However, for alternative reasons previously discussed, we have affirmed the dismissal of the § 17200 and § 1983 claims. We now reverse the district court's dismissal of the Procurement Manual claim for improper venue.

## VII

## CONCLUSION

We reverse the district court's dismissal of Flamingo's antitrust claims and Procurement Manual claim. We affirm the district court's dismissal of Flamingo's claim for breach of the implied covenant of good faith and fair dealing, and its dismissal of the claims asserted under California Business & Professions Code § 17200 and 42 U.S.C. § 1983. The parties shall each bear their respective costs for this appeal.

AFFIRMED in part, REVERSED in part, and REMANDED for further proceedings consistent with this opinion.